**BARG SINGER HOESLY PC**
Cody Hoesly, OSB#052860
choesly@bargsinger.com
121 SW Morrison Street, Suite 600
Portland, OR 97204
Telephone: (503) 241-8521

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 2100
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff and the Putative Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

B.N., individually and on behalf of all others similarly situated,

Plaintiff,

v.

Oregon Reproductive Medicine, LLC d/b/a ORM Fertility,

Defendant.

Case No. 3:25-cv-00202-IM

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OREGON REPRODUCTIVE MEDICINE'S MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION .......... 6

LEGAL STANDARD .......... 7

ARGUMENT .......... 8

I. PLAINTIFF STATES A CLAIM UNDER THE ECPA .......... 8

A. Defendant Intercepted Plaintiff's Communications for a Criminal or Tortious Purpose .......... 8

B. Plaintiff Alleges that the "Contents" of her Communications Were Transmitted Through the LinkedIn Insight Tag .......... 12

II. PLAINTIFF STATES A CLAIM FOR NEGLIGENCE .......... 14

III. PLAINTIFF STATES A CLAIM FOR BREACH OF CONFIDENCE .......... 15

IV. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT .......... 16

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alesa Veneer, Inc. v. State*,
318 Or. 33, 862 P.2d 95 (1993) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*B.K. v. Desert Care Network,*
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 9

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 14, 15

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .......... 11

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 13

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 10

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 7, 8

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal 2015) .......... 14

*In re Facebook Priv. Litig.*,
791 F.Supp.2d 705 (N.D. Cal. May 12, 2011) .......... 9

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
806 F.3d 125 (3d Cir. 2015) .......... 10, 12

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 9

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... passim

*In re Nickelodeon Cons. Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 9

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................................................... 13

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) ......................................................................... 13

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)........................................................... passim

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)................................................................ 9

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .................................................................. 9

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......................................................................................... 8

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) ................................................................. 11

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024)................................................. 7, 8, 15, 17

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)..................................................................... 9, 13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024).................................................... 12, 13, 15

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)............................................................................ 9

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..................................................................... 10, 11

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F Supp. 3d 352 (E.D.N.C. 2024)............................................................................ 11

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ............................................................................................ 7

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .................................................................. 10

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......................................................................................... 8

**STATUTES**

18 U.S.C. § 2510(8) .......... 12

18 U.S.C. § 2511(2)(d) .......... 8

## INTRODUCTION

Defendant Oregon Reproductive Medicine, LLC d/b/a ORM Fertility ("Defendant" or "ORM Fertility") operates fertility clinics in Portland, Oregon, and holds itself out as a trusted partner to those navigating the deeply personal journey of infertility. *See* Complaint (ECF No. 1) ("Compl.") ¶ 13. Through its website, www.ormfertility.com (the "Website"), Defendant invites individuals to learn about fertility treatment options and to schedule medical appointments related to those treatments. *Id.* But behind this seemingly compassionate digital front lies a troubling betrayal: while promoting a façade of care and confidentiality, ORM Fertility secretly discloses highly sensitive and protected health information ("PHI") (including details about patients' fertility consultations and appointment scheduling) to LinkedIn, one of the world's largest advertising corporations. And it does so without the patients' knowledge or consent. *See, e.g.*, *id.* Figures 1-3.

This is not a disclosure made for medical treatment or care. It is a calculated exploitation of patients' most intimate health data for commercial gain, fueling targeted advertising and enriching LinkedIn, and by extension, Defendant itself. The vehicle for this intrusion is the LinkedIn Insight Tag, a tracking tool embedded by ORM Fertility on its own Website, which intercepts PHI as patients engage with the platform. Plaintiff, like countless others, used the Website to seek medical care while maintaining a LinkedIn account. She had no reason to suspect that doing so would expose her private medical information to a third-party advertiser.

As a healthcare provider, Defendant is subject to strict duties under federal law, including the Health Insurance Portability and Accountability Act ("HIPAA"), which defines and protects individually identifiable health information ("IIHI"). This includes any data created or received by a healthcare provider that relates to a person's physical or mental health and identifies (or

could reasonably be used to identify) that person. Importantly, HIPAA protections attach to PHI collected on a provider's website, even before a formal doctor-patient relationship is established. Defendant's conduct flies in the face of these obligations.

Courts in this district routinely recognize that such conduct is unlawful. *See K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (finding that the plaintiff had sufficiently pled the crime-tort exception, with a HIPAA violation being the predicate crime or tort). This case is no different. Defendant's motion to dismiss Plaintiff's Complaint (ECF No. 11) ("MTD") should be denied in its entirety.

## **LEGAL STANDARD**

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it

'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF STATES A CLAIM UNDER THE ECPA

#### A. Defendant Intercepted Plaintiff's Communications for a Criminal or Tortious Purpose

Defendant argues that Plaintiff's claim under the Wiretap Act fails because Defendant was a party to the intercepted communication. MTD at 9. However, as conceded by Defendant, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted and disclosed Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

*Salem Health* is instructive. There, the plaintiff alleged that the defendant health care provider installed certain advertising technology on its website. 2024 WL 3970796, at *1. This advertising technology allowed the defendant to intercept the plaintiff's interactions with its website, including the "booking of appointments," in violation of HIPAA. *Id.* The court determined the plaintiff "plausibly pled the crime/tort exception." *Id.* at *5.

Here, Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's

communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization. Compl. ¶¶ 27, 104-06. Such interceptions and disclosures included "information related to the specific fertility treatment [Plaintiff] received with ORM." *Id.* ¶ 10. The majority of courts to consider this issue, including those within this District, have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Legacy Health*, 2024 WL 4794657, at *6; *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule were sufficient to invoke the crime-tort exception); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("*Meta Pixel I*") ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws").

The authorities relied upon by Defendant are misplaced, as they concern outdated case law unrelated to the unlawful disclosure of protected health information. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 708 (N.D. Cal. May 12, 2011) (interceptions included "the user's real name, gender, picture, and other information"); *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (interceptions concerned video viewing material); *Pena v.*

*GameStop, Inc.*, 670 F. Supp. 3d 1112, 1115 (S.D. Cal. 2023) (allegations concerning use of chatbot on public website). *Doe v. Kaiser Foundation Health Plan, Inc.* is also distinguishable, as that court found "[t]he collection of information itself was not for the purpose of committing a crime or tort (at least, as pled); rather, the apparent purpose was to use the information collected for market research and consumer analysis *solely for the benefit of Kaiser* in better reaching and serving its patients." 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (emphasis added). Here, LinkedIn was not operating as a mere service provider, but rather, utilized the protected information disclosed by Defendant for its own purposes. Compl. ¶ 39.

Plaintiff further alleges that such disclosures of protected information occurred independent from Defendant's interception. *See, e.g.,* Compl. ¶ 100 ("Specifically, Defendant *intercepted* Plaintiff's and Class Members' electronic communications through the LinkedIn Insight Tag, which tracked, stored *and unlawfully disclosed* Plaintiff's and Class Members' PII and PHI to third parties, such as LinkedIn.") (emphasis added). Such allegations are sufficient to establish that the alleged criminal or tortious act occurred independent from the interception itself. *See Legacy Health*, 2024 WL 4794657, at *6 ("The Court agrees with the line of cases finding that violating HIPAA *can* constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (same). Defendant's reliance on *In re Google Cookie* is misplaced, as that case did not concern the disclosure of protected health information. 806 F.3d 125, 130-31 (3d Cir. 2015) (allegations concerning general web browsing).

Defendant also argues that Plaintiff fails to allege the crime-tort exception applies because "the purpose of the purported interception by ORM Fertility was for commercial gain." MTD at 11. This argument has consistently been rejected by courts across the country. *See Stein*

*v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive."); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 381–82 (S.D.N.Y. 2024) (finding the plaintiff's allegations "plausibly support the inference that [defendant], for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain."); *Walgreen Co.,* 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law."). Defendant's reliance on *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F Supp. 3d 352, 363 (E.D.N.C. 2024) is misplaced, as several courts have declined to follow its reasoning. *See, e.g., Lugo v. Inova Health Care Servs.*, No. 1:24-cv-700 (PTG/WEF), 2025 WL 905191, at *8 (E.D. Va. Mar. 25, 2025) ("The Court declines to follow *Rodriguez* because its logic is based on three factually dissimilar cases and a previous iteration of *Kurowski*. Instead, the Court is persuaded that a plaintiff who has alleged the defendant engaged in a statutory violation, even if for a financial or commercial purpose, has stated a claim for relief under the ECPA and its crime tort exception. [T]he mere existence of [a] lawful purpose alone does not sanitize a[n interception] that was also made for an illegitimate purpose.") (internal citations omitted). This Court should do the same.

Finally, Defendant attempts to evade liability by arguing that Plaintiff fails to state an ECPA claim because the tracking pixel in this case runs on a public facing website. MTD at 12. This distinction is a red herring. A plaintiff fails to state a claim under the ECPA only where the alleged disclosures concern "generic search queries" and "browsing activity," which "do not

constitute PHI." *Legacy Health*, 2024 WL 4794657, at *4. This is a far cry from Plaintiff's allegations here, where Defendant intercepted and disclosed "several pieces of confidential information, including the [type of fertility] procedure and whether a consultation was booked." Compl. ¶ 63. Federal courts have found disclosing information of this sensitive nature to be actionable, *even when disclosed on a public website*. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024) ("Disclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable."); *see also id.* at 1084 (dismissing claims where the "[p]laintiff provides no information as to whether she used Defendant's Public Website to schedule an appointment."). As a medical provider, Defendant has a duty to protect the health information it receives. That is true regardless of whether the individual has a preexisting relationship with the medical provider.

**B. <u>Plaintiff Alleges that the "Contents" of her Communications Were Transmitted Through the LinkedIn Insight Tag</u>**

Defendant argues that Plaintiff's ECPA claim must be dismissed because "the Complaint does not allege any facts showing that the *contents* of a communication were disclosed to LinkedIn or any third party." MTD at 13. That is wrong.

Under the ECPA, "content" includes "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "For instance, contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *Meta Pixel I*, 647 F. Supp. 3d at 795. The "post-domain name portions" of website URLs—everything after ".com"—also disclose details about the webpages requested and constitute "content" under the ECPA. *See In re Google Inc. Cookie Placement Consumer*

*Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user.").

In the Ninth Circuit, "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to a disclosure of the contents of a communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Federal courts throughout the country have concluded that communications intercepted by tracking technologies, like the LinkedIn Insight Tag, constitute "contents" if they reveal the substance of health queries between a patient and healthcare provider. *Meta Pixel I*, 647 F. Supp. 3d at 795-96 (observing that "log-in buttons and…descriptive URLs…are 'contents' within the meaning of the statute…because they concern the substance of the communication."); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("here Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI."); *Mekhail*, 726 F. Supp. 3d at 926 (finding allegations "that substantive information, including details about medical appointments, conditions, and treatments, was obtained via the Pixel" sufficiently "pleaded that 'contents' were intercepted."); *see also Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (denying motion to dismiss where the plaintiff alleged that the defendant "disclosed her personal information using the Insight Tag [and] also that LinkedIn received this sensitive data and read and used it for its own marketing services."). Even the *Nienaber* court, which Defendant relies upon in support of its interception argument, explicitly stated that the "[d]isclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable." 733 F. Supp. 3d at 1083.

That is precisely what Plaintiff has alleged here. As detailed in her Complaint, and as supported by network traffic taken from the Website, Defendant discloses, through the LinkedIn Insight Tag, *the precise fertility procedures its patients are seeking consultations for*. Compl. ¶¶ 61, Figures 1-2. Specifically, as shown in Figures 1 and 2, Defendant discloses that one of its patients has scheduled a consultation for "IVF – In Vitro Fertilization." Identical disclosures were made when Plaintiff, and any other putative class member, scheduled their consultation on Defendant's Website. *Id.* Courts facing similar motions to dismiss have repeatedly held that tracking technologies, like the LinkedIn Insight Tag, intercept the contents of communications. *See, e.g., Meta Pixel I*, 647 F. Supp. 3d at 795 ("the log-in buttons" and "descriptive URLs…are 'contents' within the meaning of the statute.").

The authority relied upon by Defendant is inapposite, as those cases concerned mere browsing activity on public websites (*See, e.g., In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal 2015)) or the allegations lacked specificity. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024).

## II. PLAINTIFF STATES A CLAIM FOR NEGLIGENCE

Defendant argues that Plaintiff fails to state a claim for negligence because she "has not adequately pleaded breach." MTD at 14. That is wrong and ignores Plaintiff's allegations.

Plaintiff alleges that "she booked consultations for fertility services using Defendant's Website." Compl. ¶ 7. Plaintiff also details exactly how Defendant intercepts its patients' confidential communications through the LinkedIn Insight Tag and how it discloses such information to LinkedIn. *See id.*, Figures 1-3. As patients, like Plaintiff, navigate Defendant's Website, Defendant discloses the specific fertility treatment they are seeking, and discloses the fact that they have scheduled a consultation to receive such treatment. *Id.* Plaintiff further

alleges that "Defendant's breaches of duty caused Plaintiff and Class Members to, inter alia, have their data shared with third parties without their authorization or consent." *Id.* ¶ 125. Oregon courts are in accord that such allegations are sufficient to state a claim for negligence. *See Legacy Health*, 2024 WL 4794657, at *10; *Salem Health*, 2024 WL 3970796, at *7-8.

Defendant's arguments fall flat. For example, Defendant's attempt at characterizing Plaintiff's medical appointment as mere "browsing data" is contrary to all relevant caselaw. *See, e.g., Nienaber*, 733 F. Supp. 3d at 1083. Defendant's reliance on *B.K. v. Eisenhower Med. Ctr.* is similarly misplaced, as the court dismissed the plaintiff's allegations because the plaintiff's allegations "lack[ed] specificity" as to the information allegedly disclosed. 721 F. Supp. 3d at 1064.

## III. PLAINTIFF STATES A CLAIM FOR BREACH OF CONFIDENCE

Defendant argues that Plaintiff fails to state a claim for breach of confidence because she "has failed to allege any facts showing that her medical information was actually transmitted to LinkedIn or any other third party." MTD at 15. This argument directly conflicts with Plaintiff's allegations. Rather than relying on legal authority to support its argument, Defendant once again relies on misstatements of fact. As discussed, *supra*, Plaintiff has detailed at length the ways in which Defendant intercepted and disclosed Plaintiff's confidential communications, including communications detailing her medical appointment information. Compl. ¶¶ 7, Figures 1-3. Such allegations are sufficient to state a claim for breach of confidence. *See Legacy Health*, 2024 WL 4794657, at *4; *Salem Health*, 2024 WL 3970796, at *5; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (finding that patient status itself is a form of PHI protected by HIPAA). Defendant's baseless assertion that no medical information was disclosed should be rejected.

## IV. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT

Defendant asserts that Plaintiff's unjust enrichment claim must be dismissed "because equitable relief, such as restitution, is not available where an adequate remedy at law exists". MTD at 15. That is wrong.

As a threshold matter, Oregon courts have found that Rule 8 "permits parties at this stage of litigation to plead various claims in the alternative". *Legacy Health*, 2024 WL 4794657, at *4. Notwithstanding, whether monetary damages as a remedy at law are adequate for LinkedIn's continued possession of Plaintiff's PHI is unknown at the pleading stage. *Id.* at *9 ("Although it is possible that monetary damages as a remedy at law may be adequate, it would be premature to make that determination at the motion to dismiss stage."); *Martell*, 492 F. Supp. 3d at1148 (denying motion to dismiss unjust enrichment claim and stating, "equitable remedies are only foreclosed when the remedy at law is practical, efficient, and adequate—as full a remedy as that which can be obtained in equity. At this stage of the litigation, it is unknown whether the remedy at law meets this standard.").

Moreover, and contrary to Defendant's arguments, Plaintiff alleges that

> Plaintiff and Class Members conferred a benefit upon Defendant in the form of PII and PHI that Defendant collected from Plaintiff and Class Members, without authorization and proper compensation to exceed the limited authorization and access to that information which was given to Defendant. Defendant exceeded any authorization given and instead consciously disclosed and used the information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation. Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.

Compl. ¶ 143-145. Additionally, "[t]he benefits that Defendant derived from Plaintiff and Class Members [were] not offered by Plaintiff and Class Members gratuitously and rightly belongs to Plaintiff and Class Members. It would be against equity and good conscience for Defendant to be

permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint." *Id.* ¶ 146. Such allegations are sufficient to state a claim for unjust enrichment. *Salem Health*, 2024 WL 3970796, at *7 ("The Complaint alleges that the benefit conferred was medical information of patients; that Defendant took affirmative steps to collect it; and that it would be unjust for Defendant to retain the benefit from selling this information to advertisers. This amounts to a plausible claim for unjust enrichment."). Defendant's own authority does not foreclose the possibility of a plaintiff seeking legal and equitable relief. *See Alesa Veneer, Inc. v. State*, 318 Or. 33, 862 P.2d 95, 100 (1993) (finding that "[e]quitable relief is appropriate here, because the remedy in damages is not an adequate remedy.").

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: July 28, 2025

Respectfully Submitted,

By: */s/ Cody Hoesly*

**BARG SINGER HOESLY PC**
Cody Hoesly, OSB #052860
choesly@bargsinger.com
121 SW Morrison Street, Suite 600
Portland, OR 97204
Telephone: (503) 241-8521

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff*