Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Jenna M. Teeny, OSB No. 244519
jteeny@swlaw.com
Patricia Brum (*pro hac vice forthcoming*)
pbrum@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone: 503.624.6800
Facsimile: 503.624.6888

Attorneys for Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

B.N., individually and on behalf of all others similarly situated,

Plaintiff,

v.

OREGON REPRODUCTIVE MEDICINE, LLC d/b/a/ ORM FERTILITY,

Defendant.

Case No. 3:25-cv-00202-IM

DEFENDANT OREGON REPRODUCTIVE MEDICINE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT

Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility ("ORM Fertility") hereby replies in further support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 11 (the "Motion").

**MEMORANDUM**

## I. INTRODUCTION

Plaintiff fails to state sufficient facts to support plausible claims for relief on her claims for violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510 ("Wiretap Act") (Count I), negligence (Count II), breach of confidence (Count III), and unjust enrichment (Count IV). Each claim is premised on the false conclusion that ORM Fertility conveyed her confidential medical information to LinkedIn by installing the LinkedIn Insight Tag on its website. This conclusion is implausible for two reasons.

First, Plaintiff conflates disclosure of non-protected and nonconfidential browsing data with confidential medical information. Specifically, she alleges that the ORM Fertility website allowed LinkedIn to see what pages users were viewing and where they clicked on the public-facing website. Compl. ¶ 61. However, until a person crosses the line from public-facing website to private health portal, their browsing data is not confidential. *See, e.g.*, *K.L. v. Legacy Health*, 3:23-cv-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024). She does not allege that ORM Fertility disclosed any information from her patient portal, but merely concludes that because the LinkedIn Insight Tag could allegedly see whether users clicked on the consultation form that their confidential information must have been disclosed. Plaintiff's allegations do not support this logical leap. Nothing in the Complaint demonstrates how the LinkedIn Insight Tag would have collected confidential medical information.

Second, she presumes that ORM Fertility must have disclosed her protected medical information because LinkedIn advertised "fertility treatments" to her. On its face, this conclusion does not follow because Plaintiff's general browsing data could have informed LinkedIn about



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Plaintiff's general interest in fertility treatments. Moreover, Plaintiff does not allege that she received targeted advertising for the specific treatment that she received, or advertisements containing specific details that only a person with access to her confidential medical information would know. Importantly, Plaintiff does not rule out the possibility of LinkedIn having learned about her interest in fertility treatments from her other browsing activity.

These defects in Plaintiff's case are incurable, and her claims should be dismissed with prejudice, without leave to amend.

## II. ARGUMENT

### A. Plaintiff's Wiretap Act Claim Fails.

A Wiretap Act claimant must establish, among other things, that the defendant intercepted the contents of the plaintiff's electronic communications. *See* 18 U.S.C. § 2511. Plaintiff's Wiretap Act claim must be dismissed because she fails to establish these essential "interception" and "contents" elements.

1. No Interception Occurred, and the Crime-Tort Exception is Inapplicable.

The Wiretap Act was designed to discourage eavesdropping. It does this by prohibiting "interception," which the Wiretap Act defines as "the aural or other acquisition of the [conversation's] contents…" 18 U.S.C. § 2510(5). It also clarifies that it is not unlawful for an intended party to "intercept" the contents of a conversation. *See* 18 U.S.C. § 2511(2)(d) (no liability for parties to the communication). Plaintiff acknowledges that she cannot meet the "interception" element unless the crime-tort exception applies. *See* Response at 8. Under the crime-tort exception, a party to a communication can unlawfully intercept the message's contents only if it does so "for the purpose of committing any criminal or tortious act." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (quoting 18 U.S.C. § 2511(2)(d)). The crime or tort must be independent of the interception itself—in other words, the *interception* cannot be the crime or tort. *See In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 145 (3d Cir. 2015). Here, Plaintiff alleges that ORM Fertility's purpose in permitting the LinkedIn



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Insight Tag was to commit HIPAA violations. Plaintiff fails to allege plausible facts supporting this conclusory allegation.

As a preliminary matter, the information that ORM Fertility allegedly shared with LinkedIn is not protected health information ("PHI") barred from disclosure under HIPAA. *See* Compl. ¶ 61. Courts in this circuit agree that a person's browsing data and "clicks" collected from medical providers' public-facing websites are not PHI protected under HIPAA. *See, e.g.*, *Legacy Health*, 2024 WL 4794657, at *4. (holding that "generic search queries created during such browsing activity [on healthcare provider's website] … do not constitute PHI"); *Nienaber*, 733 F. Supp. 3d at 1084 (dismissing claim where plaintiff merely alleged collection of browsing data from hospital's public-facing website). This includes tracking clicks to open appointment inquiry forms. *Nienaber*, 733 F. Supp. 3d at 1084.

In contrast, plaintiffs sufficiently allege HIPAA violations when they describe how their healthcare provider surreptitiously shared intimate details that could not be discovered from clicks on a public-facing portal, including their patient status, health conditions, desired medical treatments, the locations where they request treatment, "phrases and search queries (such as searches for symptoms, treatment options, or types of providers)," and requests for financial assistance. *See* *M.R. v. Salem Health Hosps. & Clinics*, 6:23-CV-01691-AA, 2024 WL 3970796, at *4 (D. Or. Aug. 28, 2024).

Plaintiff attempts to brush away this case law with an out-of-context quotation from *Nienaber* that information collected from publicly-accessible webpages "may be actionable … if the information disclosed demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare, or if the information connects a particular user to a particular healthcare provider." *Nienaber*, 733 F. Supp. 3d at 1082. However, the *Nienaber* Court elaborated that "where nothing but browsing activity on a publicly available website is transmitted, courts within this circuit have held that 'the URLs, or the content of the pages located at those URLs, [do not relate] 'to the past, present, or future physical or mental health or condition of an individual.'" *Id.*



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

In other words, transmission of interactions must rise above the level of passive browsing to communicate something specific about the plaintiff. *See id.* (distinguishing *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023)). Typically, this is accomplished by tracking the information a user inputs into a filtering tool or search bar. *See, e.g.*, *id.* For example, in *Cousin v. Sharp Healthcare*, plaintiffs "narrowly" survived a motion to dismiss by alleging specific facts about how the defendant shared details about their active use of filtering tools on the public-facing website to search for providers who "specialize" in their "particular medical conditions." *Cousin*, 702 F. Supp. 3d at 973 (S.D. Cal. 2023).

Plaintiff alleges no such conduct here. She merely suggests that ORM Fertility could have transmitted data about what webpages users visited, and that those pages coincidentally might describe treatments that the users ultimately received. *See* Compl. ¶¶ 61-63. Her specific allegations are merely that she booked two consultations on ORM Fertility's website and that it disclosed "*information relating to* specific fertility treatment she received with ORM" to LinkedIn. *Id.* ¶¶ 7, 10 (emphasis added). She then paints a hypothetical to suggest how this disclosure *might* have occurred. She provides pictures of developer tools allegedly showing that LinkedIn tracks users' clicks on ORM Fertility's public-facing page when navigating pages discussing general medical information, and when users click the "schedule consultation" link, which leads users to a blank form. *Id.* ¶ 61. She also alleges that it collects users' clicks on the "submit" link on the consultation scheduling form. *See id.* Tellingly, the image appears to communicate no information about whether the form was actually submitted. And the images do not show that any data put into the form would be transmitted. Moreover, Plaintiff does not allege that *she* used this particular form, or that LinkedIn collected any data she provided to Defendant when scheduling her appointment, such as her name, treatments of interest, or other demographic information. Without this patient-specific information, Plaintiff's mere viewing and attempted submission of a consultation link is not sufficient to disclose her PHI. *See Nienaber*, 733 F. Supp. 3d at 1084. The court in *Nienaber v. Overlake Hosp. Med. Ctr.* recently rejected similar allegations as implausible.

There, the court held that plaintiff's allegations were insufficient where the plaintiff showed only "the fact that *a user* viewed the 'Schedule an Appointment' page on Defendant's Public Website was disclosed to a third party." *Id.* at 1084 (emphasis added). It elaborated that the plaintiff provided "no information as to … what information she entered on Defendant's Public Website containing information-sharing browser plugins." *Id.* Plaintiff makes the same sort of vague and hypothetical allegations here. In sum, Plaintiff does not plausibly establish that ORM Fertility shared any information other than her browsing history on its public-facing website.

Moreover, Plaintiff's conclusion that ORM Fertility's purpose in allowing LinkedIn to collect browsing data was to commit HIPAA violations is both unsupported and insufficient under *Twombly/Iqbal*. Alleging facts "merely consistent" with liability "gets 'the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Courts must also consider an 'obvious alternative explanation' for a defendant's behavior." *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 Fed. App'x. 840, 844 (9th Cir. 2021). They "need not accept" plaintiff's bare allegations that the defendant acted unlawfully "when its actions are in line with lawful 'rational and competitive business strategy.'" *Integra Med Analytics LLC*, 854 Fed. App'x. at 845 (quoting *Twombly*, 550 U.S. at 554). Plaintiff acknowledges the obvious conclusion—that ORM Fertility partnered with LinkedIn to collect data for the commercial purpose of "targeted advertising." Compl. ¶¶ 13, 58. Indeed, Plaintiff admits that LinkedIn represents that it "will only collect and process personal data … where we have lawful bases." *Id.* ¶ 54. It is not reasonable to presume that LinkedIn and ORM Fertility conspired to break the law, especially considering that Plaintiff acknowledges their valid commercial motivations.

Plaintiff's unsupported conclusion of law that ORM Fertility acted with the purpose to commit a HIPAA violation is not one that the Court should accept at face value. *See Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363 (E.D.N.C. 2024) (citing *Iqbal* and *Twombly*) (dismissing Wiretap Act claim because plaintiff's assertion that the defendant acted with criminal



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

purpose was an unsupported conclusion of law the court need not accept). Something more is needed to support this conclusion.

2. Clicks are not "contents" of any communication.

The Ninth Circuit established in *In re Zynga* that URLs and social media identifiers are not "contents" of a communication under the Wiretap Act. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). And while it is true that the *Zynga* Court noted that an exception to this rule applies when the URL reveals specific search terms or queries, that exception is inapposite here. *See id.* at 1108. The analysis in *Zynga* is instructive. There, the plaintiffs alleged that the defendants' transmission of "the Facebook webpage the user was viewing when the user clicked the link" to third parties was an unlawful transmission of the "contents" of their communications under the Wiretap Act. *Id.* at 1102–1103. The court held that the URL did not communicate "contents" because it "includes only basic identification and address information, not a search term or similar communication made by the user." *Id.* at 1109.

Here, Plaintiff alleges nothing different than the plaintiffs in *Zynga*. She concludes that ORM Fertility transmitted the "contents" of users' communications to LinkedIn by sharing the webpage that user was viewing on the ORM Fertility website. *See* Compl. ¶ 61. Plaintiff cites a string of cases that mirror the *Zynga* decision and demonstrate why her allegations are insufficient. *See* Response at 13–14. The current running through all these cases is that the URL contained "contents" of a communication if it revealed a user's personal search query. For example, in *Cousin v. Sharp Healthcare*, the court contrasted non-content information like "usage and engagement data" with "personal search queries." 702 F. Supp. 3d 967, 976. Similarly, in *In re Meta Pixel Healthcare Litig.*, the court agreed that URLs including "'basic identification and address information' is not 'content,'" but that disclosing a query string in addition to the URL could be "content." 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). Other cases Plaintiff cites do not even address whether a descriptive URL suffice as "contents." *See* Response at 13 (citing *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) (not a Wiretap Act case) and *Mekhail v.*



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

*N. Mem'l Health Care*, 726 F. Supp. 3d 916, 926 (D. Minn. 2024) ("[T]he Court need not decide at this juncture whether URLs, webpage addresses, and the like constitute 'contents' because .. [the plaintiff's complaint] goes much farther, clearly alleging that [defendant disclosed] substantive information, including details about medical appointments, conditions, and treatments").

Plaintiff argues that her allegations rise above the level of ORM Fertility disclosing just the webpage URLs she looked at, but the face of the Complaint demonstrates otherwise. The Complaint does not contain any allegation that ORM Fertility transmitted any of plaintiff's search queries to LinkedIn. She provides pictures in her Complaint that allegedly show how the LinkedIn tag records clicks of a hypothetical user of ORM Fertility's public-facing website. Compl. ¶ 61. Specifically, these pictures allegedly show that the user clicked on a link to a general information page titled "IVF – IN VITRO FERTILIZATION," a link titled "SCHEDULE YOUR CONSULT TODAY," which navigates to a blank request for consultation form. *Id.* The images do not show that ORM Fertility transmitted any of the information that might insert into the form, like information input into the generic "How Can We Help You?" or "Message" boxes. *See id.* In her response, Plaintiff claims that these images "disclose[] that one of its patients has scheduled consultation for 'IVF – In Vitro Fertilization,'" but nothing in the images she provides appear to support that conclusion. In fact, nothing about the form submission page mentions IVF treatment. *See id.* Rather, the form appears to reside on a page with the URL "https://ormfertility.com/general-fertility/." *See id.* In sum, her Complaint alleges nothing more than that ORM Fertility allowed LinkedIn to see the webpage URLs she viewed and clicked on, which is not "content" under the Wiretap Act.

Plaintiff cannot establish that ORM Fertility "intercepted … the contents" of her electronic communications. No amendment can remedy this failing. Plaintiff's Wiretap Act claim should be dismissed with prejudice, without leave to amend.

**B. Plaintiff's Negligence Claim Fails.**



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Plaintiff does not—and cannot—plausibly allege that ORM Fertility ever disclosed Plaintiff's *protected information* to LinkedIn. Accordingly, because there was no breach of this duty, Plaintiff's negligence claim fails as a matter of law.

Plaintiff has not alleged that any medical records, correspondence, medical information, diagnosis, or treatment records were ever provided to LinkedIn. Information like browsing history on a public facing website is not protected information. *See Legacy Health*, 2024 WL 4794657, at *4. Plaintiff's allegation that ORM Fertility transmitted this unprivileged data is thus insufficient to specifically allege an improper disclosure of protected information. *See, e.g. B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) ("Plaintiffs allege that they started to receive unsolicited advertisements on their Facebook accounts relating to their medical conditions shortly after visiting the Website . . . However, Plaintiffs fail to allege what, if any, medical information or medical records were transmitted or disclosed.").

Plaintiff alleges that she "booked consultations" on the website but never connects the dots to allege her consultation information was *disclosed* to LinkedIn. Response at 14. Through photos, she alleges that ORM Fertility disclosed the simple fact that users accessed its webpages. *See* Compl. ¶ 62. But nowhere in her Complaint does she state that ORM Fertility disclosed any actual personal information that she affirmatively provided to ORM Fertility. *Id.* Plaintiff alleges that ORM Fertility disclosed "the specific fertility treatment" she sought, but her complaint is devoid of such an allegation. Importantly, she merely alleges that "information *related* to the specific fertility treatment she received" was disclosed. It appears that Plaintiff alleges that ORM Fertility's transmission of a user's view of an IVF webpage discloses that the user ultimately received the procedure. This does not follow. The figures she cites to support that unsupported inference show only the public facing ORM Fertility webpage, with no personal information attached or included. *Id.* Plaintiff's allegation that she merely received general advertisements about fertility treatments supports the conclusion that LinkedIn never learned any of her confidential medical information.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Plaintiff's complaint is unlike the plaintiff's complaint in *Legacy Health*, 2024 WL 4794657. In *Legacy Health*, the plaintiff "allege[d] that information from both the public *and private* faces of the website contributed to the targeted advertising." *Id. at *10* (emphasis in original). Further, the plaintiff in *Legacy Health* alleged that "she did *not* disclose any PHI to any other source." *Id.* It was because of these two important allegations that her negligence claim survived a motion to dismiss. Here, Plaintiff does not make either key assertion. Accordingly, she has not sufficiently alleged a link to the purported advertising and has failed to specifically plead a breach. Her negligence claim must be dismissed.

**C. Plaintiff's Breach of Confidence Claim Fails.**

Plaintiff's failure to allege that ORM Fertility transmitted her confidential medical information is fatal to her breach of confidence claim. Alleging "unauthorized and unprivileged disclosure of confidential information obtained in a confidential relationship" is essential. *See Humphers v. First Interstate Bank of Oregon*, 298 Or. 706, 717 (1985). Plaintiff misses the mark here.

In her response, Plaintiff asserts she "detailed at length the ways in which [ORM Fertility] intercepted and disclosed Plaintiff's confidential communications, including communications detailing her medical appointment information." Response at 15. But, as demonstrated above, her Complaint falls short of actually alleging that ORM Fertility transmitted any information she put into its website through queries, keystrokes, or other forms of communication. Nor does she allege that ORM Fertility disclosed any of her communications with her doctors, or any of her private patient portal information. All that exists is a speculative leap—that her medical history was revealed because LinkedIn might have seen that she viewed general information discussing a procedure she subsequently may have engaged ORM Fertility to perform (Plaintiff does not even allege that she received an IVF procedure). None of this constitutes an "unprivileged disclosure of confidential information obtained in a confidential relationship." Plaintiff's breach of confidence claim must be dismissed without leave to amend.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

**D. Plaintiff's Unjust Enrichment Claim Fails.**

Plaintiff's unjust enrichment claim is premised on the same faulty legal conclusion as her other claims: that users' views and clicks on ORM Fertility's publicly accessible webpages constitute protected health information. That is incorrect. *See, e.g.*, *Legacy Health*, 2024 WL 4794657, at *4 ("generic search queries created during such browsing activity … do not constitute PHI"); *Nienaber*, 733 F. Supp. 3d at 1084 (browsing data is not PHI). As discussed at length above, Plaintiff fails to allege that ORM Fertility disclosed any of *her data*—her search queries, her medical appointment information, details directly concerning and confirming that she received particular medical treatments. The crux of an unjust enrichment claim is that the defendant unjustly retains a benefit conferred by the plaintiff. Plaintiff cannot and does not allege that ORM Fertility acted unjustly when it allegedly allowed LinkedIn to view users' unprotected browsing data for commercial purposes.

**CONCLUSION**

For the reasons stated above, the Court should dismiss Plaintiff's claims for violation of the Wiretap Act (Count I), negligence (Count II), breach of confidence (Count III), and unjust enrichment (Count IV) with prejudice and without leave to amend.

DATED this 4th day of August, 2025.

SNELL & WILMER L.L.P.

*/s/ Clifford S. Davidson*

Clifford S. Davidson, OSB No. 125378
Jenna M. Teeny, OSB No. 244519
Patricia Brum (*pro hac vice forthcoming*)

Attorneys for Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800