Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Jenna M. Teeny, OSB No. 244519
jteeny@swlaw.com
Patricia Brum (*pro hac vice forthcoming*)
pbrum@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone: 503.624.6800
Facsimile: 503.624.6888

Attorneys for Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

B.N., individually and on behalf of all others similarly situated,

Plaintiff,

v.

OREGON REPRODUCTIVE MEDICINE, LLC d/b/a/ ORM FERTILITY,

Defendant.

Case No. 3:25-cv-00202-IM

**DEFENDANT OREGON REPRODUCTIVE MEDICINE, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

**Page**

LR 7-1 CERTIFICATION ........ 1
MOTION ........ 1
I. INTRODUCTION ........ 1
II. THE ALLEGATIONS ........ 2
III. LEGAL STANDARD ........ 5
IV. ARGUMENT ........ 5
A. Plaintiff's Wiretap Act Claim Fails (Count I) ........ 5
1. No Interception Occurred ........ 6
a. Plaintiff's allegations do not plausibly allege HIPAA violations. ........ 7
2. Plaintiff Fails to Allege any Plausible Interception of "Contents" ........ 11
B. Plaintiff Has Failed to State a Claim for Negligence (Count II) ........ 13
C. Plaintiff Has Failed to State a Claim for Breach of Confidence (Count III) ........ 14
D. Plaintiff Has Failed to State a Claim for Unjust Enrichment (Count IV) ........ 14
V. CONCLUSION ........ 15



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

## LR 7-1 CERTIFICATION

In compliance with Local Rule 7-1(a), counsel for Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility ("ORM Fertility") certifies the parties made a good faith effort to resolve the disputes at issue in this motion and were unable to do so.

## MOTION

ORM Fertility respectfully requests that the Court dismiss Plaintiff B.N.'s ("Plaintiff") First Amended Class Action Complaint ("Amended Complaint") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

This putative class action is one of many across the nation challenging the use of common third-party analytics tools on healthcare-related websites. Most of these suits involve websites that have a client portal. This case, however, is entirely based on a website that any internet user may access. Specifically, Plaintiff alleges that ORM Fertility violated her privacy rights by implementing a common tool known as LinkedIn Insight Tag ("Insight Tag") on its public-facing website www.ormfertility.com ("Website"). Plaintiff alleges the Insight Tag collected her browsing and click history on the Website, and that ORM Fertility should not have allowed this because her browsing and clicks on the public website are protected health information ("PHI"). Plaintiff asserts these facts entitle her to relief on four claims: (1) violation of the Electronic Communications Privacy Act ("Wiretap Act"); (2) negligence; (3) breach of confidence; and (4) unjust enrichment.

This Court dismissed Plaintiff's initial complaint because she failed to adequately plead her Wiretap Act claim. Opinion and Order Granting Defendant's Motion to Dismiss ("Order"), ECF No. 26 at 2. That claim was deficient because it was premised on the theory that her public browsing and click data are PHI. *See* Order at 10–12. Further, the Court reasoned that Plaintiff supplied no facts to support the conclusion that the Insight Tag collected "information related to [] fertility-related medical appointments," consultation bookings, what physician or provider she saw, procedures, "any treatment details," or "any other activity … that could constitute PHI." *Id.*



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

at 12. As her Wiretap Act claim was the only federal claim, the Court declined to exercise supplemental jurisdiction over Plaintiff's remaining Oregon law claims. *Id.* at 15. Plaintiff amended her complaint to add additional allegations regarding her use of the Website and her google search queries.

Plaintiff's Amended Complaint must be dismissed because it suffers from the same fatal flaw this Court identified in its Order: her allegations do not support an inference that ORM Fertility disclosed her PHI to LinkedIn. As in her initial complaint, her claims entirely rely on the theory that her browsing and click history on a public-facing website constitutes PHI. Her amendments do not suggest that the Insight Tag collected any information about whether she ever scheduled an appointment at a certain date and time, what treatment she sought, which doctor she sought to see, her patient status, her payments, or if she had a patient portal account. Moreover, the three images of the Website that Plaintiff relies on as alleged conclusive proof of transmission of her PHI—which are the same as those included in her initial complaint—show no transmission of any of her personal healthcare data. Nor do they suggest that the Insight Tag collected personal or contact information when users filled out and submitted a general inquiry form on the Website. At best, the images show only whether a user submitted a form but not the type of treatment they sought. Plaintiff's Wiretap Act claim in the Amended Complaint is just as deficient as it was when she filed her initial complaint.

As in its last order, the Court should again dismiss the Wiretap Act claim and decline to exercise supplemental jurisdiction. Moreover, Plaintiff's remaining claims also still fail as a matter of law. As detailed below, the Amended Complaint does not allege sufficient facts to establish the essential elements of any of her four causes of action and should be dismissed pursuant to Rule 12(b)(6).

## II. THE ALLEGATIONS

ORM Fertility is an Oregon limited liability company that provides fertility services and treatments in Portland, Oregon. Am. Compl. ¶ 13. It operates a public facing Website through which anyone with an internet connection (including patients, non-patients, their families, doctors,



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

visitors, prospective employees, etc.) can access general information about ORM Fertility, identify ORM Fertility facilities and services, seek employment, request initial consultations, and more. *See* Am. Compl. ¶¶ 1, 13, 74, 101, at 21–22 (Figs. 1–3). Plaintiff generally alleges the Website contains a software code, the Insight Tag, that disclosed patients' personally identifiable information and protected health information (together, "PHI") to LinkedIn. Am. Compl. ¶¶ 76, 78, 82. The alleged PHI that ORM Fertility purportedly collected and shared with LinkedIn does not include communication between patients and doctors, or about any treatment a patient may be receiving from ORM Fertility. Rather, the "PHI" is Plaintiff's browsing activity and clicks on the Website's public-facing pages. Am. Compl. ¶¶ 18–19, 76–78.

Plaintiff resides in Portland, Oregon and alleges that she learned about ORM Fertility because it is near her home. Am. Compl. ¶ 8. She alleges that she navigated directly to the Website's URL without conducting "any online searches for fertility treatment or fertility clinics." Am. Compl. ¶¶ 8, 17. After arriving at the Website, Plaintiff allegedly navigated to a public-facing subpage discussing IVF treatments (ormfertility.com/ivf-in-vitro-fertilization), clicked on a link titled "Schedule Your Consult," which took her to another page with a blank form (ormfertility.com/general-fertility/). Am. Compl. ¶¶ 18–19, at 21–22 (Figs. 1–3). The Amended Complaint does not mention whether the only way to access the "Schedule Your Consult" is via the IVF subpage.

The form includes blank fields for name, email, phone, address, date of birth, a message, and drop-down fields titled "How Can We Help You?" and "How did you hear about us?" Am. Compl. at 22 (Fig. 3). As pictured, the form does not include fields or drop-down menus that identify the type of treatment the person is seeking, or that would allow a person to schedule an appointment on a certain date or time. *See id.* Instead, the form appears to give ORM Fertility the user's contact information so that ORM Fertility can call or email back in response to the inquiry. *See id.* Next to the picture of the form, Plaintiff includes an "overlay" image of the data that the Insight Tag allegedly intercepted. *Id.* This allegedly captured data does not include any of the form's field titles (*e.g.* name, date of birth, etc.); those fields' filled in content; or the prior subpages



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

the user accessed. *See id.* Nor does the Insight Tag overlay mention anything about IVF or any other specific services ORM Fertility offers. *Id.* Rather, the Insight Tag captures only that a person navigated to the blank form and clicked on its "submit" link. *See id.*

Plaintiff alleges that she "scheduled an IVF consultation on ORM's website" with this form, even though the form does not appear to have an option to schedule appointments and she does not claim to have identified on the form that she was interested in IVF. Am. Compl. ¶¶ 18–19, at 22 (Fig. 3). Her allegations instead suggest that she provided her contact information to ORM Fertility to request a call back by filling out "her first and last name, email address, phone number, date of birth, city, state, and zip code." Am. Compl. ¶ 19. She alleges that ORM Fertility disclosed this information to LinkedIn. *Id.* She alleges that she submitted this form twice, once in May 2022 and another time in March 2024, and that she "attended her consultation and received services related to fertility treatment" from ORM Fertility. Am. Compl. ¶¶ 7-8. She refuses to disclose "the precise nature of the treatment she received," but asserts that she "scheduled an IVF consultation" because she clicked on the "Schedule Your Consultation" button on the IVF page and submitted the general inquiry form. Am. Compl. at 3 n.1, ¶¶ 18–19. Eight months after she allegedly submitted the form for the second time, Plaintiff alleges that she saw "IVF-specific targeted advertisements on LinkedIn." Am. Compl. ¶¶ 7, 9, 18–19, 84. Thus, it appears that Plaintiff may have never even had IVF-specific appointments or treatments.

Plaintiff claims that the images in Figs. 1–3 showing the Website and Insight Tag overlays are conclusive evidence that the Insight Tag intercepted her PHI, and that "no inference needs to be drawn as to the link between Plaintiff's disclosed information and the targeted advertisements she ultimately received on LinkedIn." Am. Compl. ¶ 83. Plaintiff further alleges ORM Fertility's purpose when using the Pixel was to commit crimes and torts—though she provides no facts in support of this baseless allegation. Am. Compl. ¶ 122. Plaintiff alleges the PHI has financial value and that LinkedIn "sells" these data to "its advertising clients." Am. Compl. ¶ 86.

Based on these allegations, Plaintiff asserts the following claims against ORM Fertility: Count I - violation of the Wiretap Act; Count II – Negligence; Count III – Breach of Confidence;



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

and Count IV – Unjust Enrichment. Plaintiff purports to represent a class of "all persons in the United States, who during the class period, had a LinkedIn account and booked a consultation on www.ormfertility.com" and a class of "all persons in Oregon who, during the class period, had a LinkedIn account and booked consultation on www.ormfertility.com." Am. Compl. ¶¶ 95–96.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient "'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679–80 (2009)). "The plausibility standard is not akin to a probability requirement, … it asks for more than a sheer possibility that a defendant has acted unlawfully." *Kurisu v. Svenhard's Swedish Bakery Supplemental Key Mgmt. Ret. Plan*, No. 3:21-CV-912-SI, 2022 WL 6733328, at *2 (D. Or. Oct. 11, 2022) (citing Mashiri v. Epsten Grinnell & Howell, 845 F.3d 984, 988 (9th Cir. 2017)).

As the Supreme Court made clear in *Bell Atl. Corp. v. Twombly*, factual allegations must be enough to raise a right to relief above the speculative level. 550 U.S. 544, 555 (2007). Dismissal is therefore appropriate where the complaint lacks either a "cognizable legal theory" or sufficient factual allegations to support one. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652–53 (9th Cir. 2019).

## IV. ARGUMENT

### A. Plaintiff's Wiretap Act Claim Fails (COUNT I).

A Wiretap Act claimant must establish that the defendant: (1) intentionally (2) intercepted or attempted to intercept (3) the contents of (4) an electronic communication (5) using a device. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); 18 U.S.C. § 2511. Plaintiff's Wiretap Act claim must be dismissed because, at the very least, she cannot establish the "interception" and "contents" elements.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

1. <u>No Interception Occurred.</u>

The Wiretap Act discourages eavesdropping by prohibiting "interception," which the Wiretap Act defines as "the aural or other acquisition of the [conversation's] contents…" 18 U.S.C. § 2510(4). Parties to the conversation, however, are not subject to this prohibition. 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person ... to intercept a wire, oral, or electronic communication where such person is a party to the communication[.]"); *see also In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d at 274 (noting the Wiretap Act's one-party consent rule). Put simply, a party to a communication cannot be held liable for "intercepting" a message intended for itself, nor can it be accused of unlawfully eavesdropping on its own communications. Recent decisions confirm that users of a healthcare provider's website cannot state a claim under the Wiretap Act when the provider is the intended recipient of the communication. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (finding no liability for medical provider due to party exception).

ORM Fertility falls squarely into the party exception, and Plaintiff admits as much. *See* Order at 5 (citing Plaintiff's Memorandum of Law in Opposition to Defendant Oregon Reproductive Medicine's Motion to Dismiss Complaint ("Response") ECF 14 at 8). Consequently, Plaintiff acknowledges she cannot meet the "interception" element unless the crime-tort exception applies. *See* Response at 8. Under the crime-tort exception, a party to a communication can unlawfully intercept a message's contents only if it does so "for the purpose of committing any criminal or tortious act." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (quoting 18 U.S.C. § 2511(2)(d)). Here, Plaintiff alleges that the crime-fraud exception applies because ORM Fertility's purpose for installing the LinkedIn Insight Tag was to commit HIPAA violations. Plaintiff does not allege facts consistent with this conclusion.[1]

---

[1] ORM Fertility maintains that its "purpose" for installing the Insight Tag was purely for commercial purposes and an alleged HIPAA violation is not an independent act sufficient to establish the crime-tort exception but will not re-hash those arguments in this Motion given this Court's prior ruling on the issue. ORM Fertility, however, reserves the right to establish its exclusive commercial purpose later should this case proceed beyond the pleading stage.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

a. <u>Plaintiff's allegations do not plausibly allege HIPAA violations.</u>

No allegation in the Amended Complaint plausibly suggests that ORM Fertility violated HIPAA by disclosing Plaintiff's PHI to LinkedIn. HIPAA's "Privacy Rule" prohibits health care providers from disclosing PHI, which consists of information that could be used to identify an individual in combination with information that "relates to the past, present, or future physical or mental health or condition of an individual; the provision of healthcare to an individual; or the past, present, or future payment for the provision of health care to an individual." *K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *3 (D. Or. Nov. 14, 2024) (citing 45 C.F.R. §160.103).

In accordance with other courts in this circuit, this Court recognized in its Order that "[w]hile information that relates to patients' 'past, present, or future physical … health condition[s]' is protected, … PHI does not stretch so far as to include a user's browsing activity on a public-facing website that generates only general search queries." Order at 10 (citing *K.L.*, 2024 WL 4794657, at *4. (holding that "generic search queries created during such browsing activity [on healthcare provider's website] … do not constitute PHI"); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (holding that list of URLs visited by plaintiff, including "information about a specific doctor," "search results" for a phrase, and "other publicly available medical information" was not PHI because it communicated nothing specifically about the plaintiff's health); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024) ("where nothing but browsing activity on a publicly available website is transmitted, courts within this circuit have held that the URLs, or the content of the pages located at those URLs, do not relate to the past, present, or future physical or mental health or condition of an individual") (internal punctuation omitted). Applying that principle, this Court held that Plaintiff's browsing and click data collected from the Website is not PHI. Order at 10–12, 14.

In contrast, plaintiffs can sufficiently allege HIPAA violations when they describe how their healthcare provider surreptitiously shared intimate details that could not be discovered from



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

clicks on a public-facing portal, including their patient status, health conditions, desired medical treatments, the locations where they request treatment, "phrases and search queries (such as searches for symptoms, treatment options, or types of providers)," and requests for financial assistance. *See M.R. v. Salem Health Hosps. & Clinics*, 6:23-CV-01691-AA, 2024 WL 3970796, at *4 (D. Or. Aug. 28, 2024). In narrow instances, this information may be disclosed by a plaintiff's use of interactive website tools, like filtering portals. *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023). For example, in *Cousin v. Sharp Healthcare*, plaintiffs "narrowly" survived a motion to dismiss by alleging specific facts about how the defendant shared details about their active use of filtering tools on the public-facing website to search for providers who "specialize" in their "particular medical conditions." *Id.*

This Court also contrasted Plaintiff's allegations to cases where HIPAA violations were found. Order at 11. For example, in *Legacy Health*, "the plaintiff used 'a personalized password protected page" where patients could 'communicate online with their physicians, retrieve healthcare records, review prescriptions, sign up for research, and schedule appointments.'" Order at 11 (quoting *Legacy Health*, 2024 WL 4794657, at *2). And just as in *Legacy Health*, this Court saw "a meaningful difference between searches conducted on a website accessible to anyone and a private portal provided to an individual patient." *Id.* (quoting *Legacy Health*, 2024 WL 4794657, at *4); *see also Harrill v. Emanuel Med. Ctr.*, No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025) ("[A]n internet user might research medical information for reasons unrelated to the user's own health conditions."). The Order continued that while "intercepting data relating to patient portal logins and logouts alongside identifiers for each patient … may be protected by HIPAA," Plaintiff did not plausibly allege that by visiting and clicking on the three public-facing pages she allegedly viewed on the Website, that the Insight Tag collected her PHI. *See* Order at 11–12 (citing Compl. at 17–18, Figs. 1–3) (internal punctuation and citations omitted). Specifically, this Court drilled down on the fact that even though Plaintiff alleged that the Insight Tag "intercepted 'confidential information related to [] fertility-related medical appointments,' and 'the procedure and whether a consultation was booked,' … the Complaint does



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

not supply facts to support that conclusion." Order at 12 (citing Compl. ¶¶ 62-63) (internal citation omitted). "[U]nlike other cases that have survived a motion to dismiss, the Complaint does not plead that the webpage tracked what physician or other provider she scheduled an appointment with or any treatment details." Order at 12 (citing *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) (holding that HIPAA protected information about a user's "medical conditions, treatment details, appointment information, and the physician she selected").[2]

Plaintiff's Amended Complaint does not cure the defects of her original. Plaintiff relies on the same theory—that her navigating public-facing portions of the Website and submitting a general inquiry form transmitted her PHI to LinkedIn. *See* Am. Compl. ¶¶ 18–21, 29. She argues that this information was PHI because "they identify Plaintiff and reveal" that "she booked a medical consultation with a specific provider ORM," "that she sought fertility treatment, and specifically that she sought in-vitro fertilization" Am. Compl. ¶¶ 23, 31 (internal punctuation omitted). However, as in her first Complaint, the facts Plaintiff alleges do not support these conclusions.

First, Plaintiff's description of how she used the general inquiry form does not support her allegation that the Insight Tag discovered that she "booked a medical consultation with … ORM."

[2] Plaintiff filed two notices of supplemental authority in connection with the Motion to Dismiss the Complaint. *See* Plaintiff's Notice of Suppl. Auth. ("First Notice"), ECF No. 22 (citing *A.M. v. Advanced Reprod. Health Ctr.*, Case No. 1:24-cv-07559, ECF No. 42 (N.D. Ill. Aug. 8, 2025) ("*Advanced Reprod. Health Ctr.*")); Plaintiff's Notice of Suppl. Auth. ("Second Notice") ECF No. 25 (citing *Vriezen v. Infinite Health Collaborative*, Case No. 0:24-CV-03743 (D. Minn. Sept. 30, 2025) ("*Vriezen*")).

However, neither case is binding on this Court nor supportive of Plaintiff's position. In *Advanced Reprod. Health Ctr.*, the district court denied the defendant's motion to dismiss but the website at issue included a password-protected patient portal, unlike ORM Fertility's Website which is a public facing website only. Consol. Class Action Compl. ¶¶ 37, 41, 50, *A.M. v. Advanced Reprod. Health Ctr.*, Case No. 1:24-cv-07559, ECF No. 27 (N.D. Ill. Jan. 16, 2025). Likewise, the district court in *Vriezen* dismissed the complaint as to one of the plaintiffs who only alleged disclosure of "physicians, locations, … same-day surgery options, and treatment option," which is similar to the generic information about fertility treatment that Plaintiff is relying on in this case. Second Notice at 9, 11–12.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

*See* Am. Compl. ¶ 23. Plaintiff alleges that Figure 3 pictured in her Amended Complaint is the form that she used to "book" a consultation. Am. Compl. ¶¶ 19, 76, at 21–22 (Figs. 2–3) (alleging that she clicked on the "Schedule Your Consult" button on the subpage "ormfertility.com/ivf-in-vitro-fertilization/" which, according to her Figs. 2–3, leads to the general inquiry form shown in Fig. 3). On its face, Figure 3 does not permit a user to schedule a time and date to speak with ORM. *See* Am. Compl. at 22 (Fig. 3). Rather, it appears to allow a user to request a call back. *See id.* Nor does the form reveal interest in any specific treatment. Order at 11 ("The page [Fig. 3] does not include any detail about IVF services, and the context suggests the form is ORM's general interest form"). Plaintiff argues that tracking her submission of this form disclosed her medical information because she was "funneled" there from the IVF page—but Plaintiff's allegations do not show that the general inquiry form was a subpage of, or *only* accessible from, the IVF page. *Accord*, Order at 11–12 (finding that the general inquiry form's URL and page title "suggests that Figure 3 is not a subpage accessed from clicking on Figure 2"). Thus, accessing the general inquiry form from the IVF page does not communicate that the inquiry is about IVF. And even though Plaintiff alleges that she entered "first and last name, email address, phone number, date of birth, city, state, and zip code" into the form—nothing contained in the overlay suggests that the Insight Tag was set up to collect any of these field entries. *See* Am. Compl. ¶ 19, at 22 (Fig. 3). Moreover, Plaintiff's contact information on its own does not constitute PHI because it does not relate to Plaintiff's medical conditions, treatments, or payments. *See* 45 C.F.R. §160.103.

Second, Plaintiff's conclusion that ORM Fertility's disclosure of her PHI is the only explanation for LinkedIn showing her IVF advertisements is implausible. *See* Am. Compl. ¶ 85. As noted above, Plaintiff declines to disclose what treatment she received from ORM Fertility, so it is unclear whether IVF actually relates to her medical conditions, treatments, or payments. Am. Compl. at 3 n.1. Moreover, Plaintiff's allegations suggest that the most plausible explanation for her seeing IVF advertisements was solely because she fit into a demographic group LinkedIn targets with those advertisements. *See* Am. Compl. ¶ 52. It is also plausible that LinkedIn gathered she might have been interested in IVF without discovering her PHI because Plaintiff allegedly



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

viewed general medical information about IVF treatment on public-facing websites with the Insight Tag. It does not follow that ORM Fertility needed to disclose any information about her medical conditions, treatments, or payments to LinkedIn for it to assume she might be interested in IVF.

Taken in the light most favorable to the Plaintiff, *at best* the Insight Tag allegedly captured only that Plaintiff navigated public-facing elements of the Website and that she clicked "submit" on a general inquiry form. *See* Am. Compl. at 22 (Fig. 3). She does not allege that the Insight Tag collected communications from her requesting particular treatments or services, that it learned she was a patient, or that it tracked her into a patient portal. This is not sufficient to support Plaintiff's allegation that ORM Fertility transmitted her PHI to LinkedIn, and as before, the Court should dismiss her Wiretap Act claim.

2. Plaintiff Fails to Allege any Plausible Interception of "Contents"

Plaintiff's Wiretap Act claim also fails because the Complaint does not allege any facts showing that the *contents* of a communication were disclosed to LinkedIn or any third party. The Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning" of a communication. 18 U.S.C. § 2510(8). Courts have consistently interpreted this to mean the actual intended message conveyed—not metadata or technical information related to the transmission.

For example, in *In re Zynga Privacy Litigation*, the Ninth Circuit held that "content" is distinct from "record" information such as a user's name or the URL of a webpage, which merely reflects the location of a resource and not the substance of a communication. 750 F.3d 1098, 1107–08 (9th Cir. 2014). Likewise, in *Facebook Internet Tracking Litigation*, the court held that a URL does not constitute "contents" under the Wiretap Act because it is simply "record information regarding the characteristics of the message that is generated in the course of the communication." 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015). Social media identifiers are not "content" either. *In re Zynga Privacy Litig.*, 750 F.3d at 1107. The analysis in *Zynga* is instructive. There, the plaintiffs alleged that the defendants' transmission of "the Facebook webpage the user was viewing when



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

the user clicked the link" to third parties was an unlawful transmission of the "contents" of their communications under the Wiretap Act. *Id.* at 1102–1103. The court held that the URL did not communicate "contents" because it "includes only basic identification and address information, not a search term or similar communication made by the user." *Id.* at 1109.

Courts agree that a URL contains the "contents" of a communication only if it revealed a user's personal search query. For example, in *Cousin v. Sharp Healthcare*, the court contrasted non-content information like "usage and engagement data" with "personal search queries." 702 F. Supp. 3d at 976. Similarly, in *In re Meta Pixel Healthcare Litig.*, the court agreed that URLs including "'basic identification and address information' is not 'content,'" but that disclosing a query string in addition to the URL could be "content." 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022).

Here, Plaintiff does not allege that any actual message content—such as the substance of a conversation with a healthcare provider—was transmitted. Instead, Plaintiff relies on vague references to "medical information," "health information," and "PHI" being sent to LinkedIn, but these are unsupported by specific factual allegations. Such conclusory statements are legally insufficient. *See Ashcroft*, 556 U.S. at 678; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011). Plaintiff alleges nothing different than the plaintiffs in *Zynga*. She concludes that ORM Fertility transmitted the "contents" of users' communications to LinkedIn by sharing the webpage that user was viewing on the ORM Fertility website. *See* Am. Compl. ¶ 76.

Plaintiff argues that her allegations rise above the level of ORM Fertility disclosing just the webpage URLs she looked at, but the face of the Complaint demonstrates otherwise. The Complaint does not contain any allegation that ORM Fertility transmitted any of Plaintiff's search queries to LinkedIn. She provides pictures in her Complaint that allegedly show how the Insight Tag records clicks of a user of ORM Fertility's public-facing website. Am. Compl. at 21–22 (Figs. 1–3). Specifically, these pictures allegedly show that the user clicked on a link to a general information page titled "IVF – IN VITRO FERTILIZATION," a link titled "SCHEDULE YOUR CONSULT TODAY," which navigates to a blank request for consultation form. *Id.* The images do not show that ORM Fertility transmitted any of the information that might insert into the form,



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

like information input into the generic "How Can We Help You?" or "Message" boxes. *See id.* Plaintiff claims that these images disclose that one of its patients has scheduled consultation for IVF, but nothing in the images she provides appear to support that conclusion. In fact, nothing about the form submission page mentions IVF treatment. *See id.* Rather, the form appears to reside on a page with the URL "https://ormfertility.com/general-fertility/." *See id.*; Order at 11. In sum, her Complaint alleges nothing more than that ORM Fertility allowed LinkedIn to see the webpage URLs she viewed and clicked on, which is not "content" under the Wiretap Act.

Courts have dismissed similar claims for this very reason. In *B.K. v. Eisenhower Med. Center*, for instance, the court rejected nearly identical allegations under California law, holding that the plaintiffs failed to "allege what, if any, medical information or medical records were transmitted or disclosed." 721 F. Supp. 3d at 1064. The court found that general claims about patients and hypothetical scenarios did not amount to specific factual allegations of content disclosure. *Id.* In short, Plaintiff has failed to plead the required element of content interception under the Wiretap Act, and the claim should be dismissed accordingly.

**B. Plaintiff Has Failed to State a Claim for Negligence (Count II)**

Plaintiff's claim for negligence fails because she has not adequately pleaded breach. To prevail on a negligence claim, a plaintiff must plausibly allege: (1) the defendant's conduct created a foreseeable risk of harm; (2) the risk threatened a legally protected interest; (3) the defendant's conduct was unreasonable in light of that risk; (4) the conduct was a cause-in-fact of the plaintiff's harm; and (5) the plaintiff's injury fell within the class of harms that made the defendant's conduct negligent in the first place. *Piazza ex rel. Piazza v. Kellim*, 271 Or. App. 490, 516 (2015), *aff'd*, *Piazza v. Kellim*, 360 Or. 58 (2016). Here, Plaintiff fails to adequately plead a breach. As such, the negligence claim is deficient and should be dismissed.

Plaintiff has not alleged any facts demonstrating that her medical records—or those of any individual—were disclosed to a third party, nor that any specific diagnosis, treatment, or medication information was shared. Indeed, Plaintiff's entire theory of liability is based on ORM Fertility allegedly sharing a user's browsing history on a public facing website before that user



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

received any treatment from ORM Fertility or spoke with any medical professionals, and without disclosing whether treatment was ever sought. As a result, Plaintiff fails to demonstrate that ORM Fertility's conduct was unreasonable. *See B.K.*, 721 F. Supp. 3d at 1064.

### C. Plaintiff Has Failed to State a Claim for Breach of Confidence (Count III)

Under Oregon law, a claim for breach of confidence arises from the principle that "unauthorized and unprivileged disclosure of confidential information obtained in a confidential relationship can give rise to tort damages." *Humphers v. First Interstate Bank of Oregon*, 298 Or. 706, 717 (1985). This duty to maintain confidentiality may be "imposed as a condition of engaging in the professional practice of medicine[.]" *Id.* at 718.

A plaintiff asserting a breach of this nonconsensual duty must specifically identify both its legal source and its terms. *Id.* at 719. Where the duty is based on a statute or regulation, the plaintiff must show that the rule validly applies to the facts alleged—regardless of whether it is actively enforced by regulatory authorities. *Id.*

Here, Plaintiff has failed to allege any facts showing that her medical information was actually transmitted to LinkedIn or any other third party. Absent such factual support, her claim for breach of confidence cannot stand and should be dismissed without leave to amend.

### D. Plaintiff Has Failed to State a Claim for Unjust Enrichment (Count IV)

To prevail on a claim for unjust enrichment under Oregon law, a plaintiff must establish that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware it received the benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without compensating the plaintiff. *Winters v. Cnty. of Clatsop*, 210 Or. App. 417, 421 (2007). Plaintiff's unjust enrichment claim fails because equitable relief, such as restitution, is not available where an adequate remedy at law exists.

Equitable relief does not lie if there is an adequate remedy at law. *Alsea Veneer, Inc. v. State*, 318 Or. 33, 43 (1993); *see also In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) (dismissing equitable relief claims that relied on the same factual basis as legal claims, finding they were duplicative and not truly alternative theories



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

of recovery). Here, Plaintiff's legal claims, if viable, would provide sufficient remedies. As such, the unjust enrichment claim is barred because Plaintiff has not shown the absence of an adequate legal remedy.

Moreover, Plaintiff has not sufficiently alleged the financial gain that ORM Fertility alleged obtained from the purported disclosure. To the contrary, Plaintiff includes conclusory allegations that ORM Fertility is selling/monetizing the data, but her allegations explain only how LinkedIn would have done this. There is no allegation explaining how ORM Fertility monetized or sold any data. Nor does Plaintiff plausibly allege how ORM Fertility's alleged disclosure of browsing and click data on a public-facing website would be "unjust" without compensating Plaintiff. Accordingly, Plaintiff's claim for unjust enrichment must be dismissed.

## V. CONCLUSION

For the foregoing reasons, ORM Fertility respectfully requests that the Court grant its motion to dismiss.

DATED this 23rd day of December, 2025.

SNELL & WILMER L.L.P.

*/s/ Clifford S. Davidson*

Clifford S. Davidson, OSB No. 125378
Jenna M. Teeny, OSB No. 244519
Patricia Brum (*pro hac vice*)

Attorneys for Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800