**BARG SINGER HOESLY PC**
Cody Hoesly
choesly@bargsinger.com
121 SW Morrison Street, Suite 600
Portland, OR 97204
Telephone: (503) 241-8521

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
Stephen A. Beck (admitted *pro hac vice*)
701 Brickell Ave., Suite 2100
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| B.N., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Oregon Reproductive Medicine, LLC d/b/a ORM Fertility,<br><br>Defendant. | Case No. 3:25-cv-00202-IM<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OREGON REPRODUCTIVE MEDICINE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ... 7
LEGAL STANDARD ... 8
ARGUMENT ... 9
I. PLAINTIFF PLAUSIBLY ALLEGES DEFENDANT VIOLATED FEDERAL LAW ... 9
II. PLAINTIFF STATES A CLAIM UNDER THE ECPA ... 13
A. Defendant Intercepted Plaintiff's Communications for a Criminal or Tortious Purpose ... 13
1. Interception Is Separate From Disclosure ... 13
2. Defendant Cannot Escape Liability By Alleging A Commercial Purpose ... 15
B. Plaintiff Alleges that the "Contents" of her Communications Were Transmitted Through the LinkedIn Insight Tag ... 16
III. PLAINTIFF STATES A CLAIM FOR NEGLIGENCE ... 19
IV. PLAINTIFF STATES A CLAIM FOR BREACH OF CONFIDENCE ... 20
V. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT ... 21
CONCLUSION ... 23

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ........ 12

*Alesa Veneer, Inc. v. State*,
318 Or. 33, 862 P.2d 95 (1993) ........ 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 15

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 19, 20

*B.K. v. Eisenhower Med. Ctr.*
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ........ 20

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) ........ 11

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal 2020) ........ 16

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ 12

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F.Supp.3d 369 (S.D.N.Y. July 30, 2024) ........ 15

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 12, 18

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014) ........ 20

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 20

*Doe v. Regents of Univ. of California*,
672 F.Supp.3d 813 (N.D. Cal. May 8, 2023) ........ 20

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)................................................................ 12, 13, 17

*Georgia v. Public.Resource.Org, Inc.*,
590 U.S. 255 (2020)........................................................................................... 9, 16

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .................................................................. 9

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal 2015) ........................................................................ 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ................................................................................. 17

*In re Ford Tailgate Litig.*,
2014 WL 1007066 (N.D. Cal. Mar. 12, 2014).................................................................. 23

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).................................................................................... 17

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........................................................................ 17

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023)..................................................................... 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..................................................................... passim

*In re Meta Pixel Healthcare Litig.*,
713 F.Supp.3d 650 (N.D. Cal. 2024) ........................................................................... 12

*In re Zynga Privacy Litigation*
750 F.3d 1098 (9th Cir. 2014) ................................................................................. 18

*Jackson v. LinkedIn Corporation*,
744 F.Supp.3d 986 (N.D. Cal. Aug. 13, 2024) ................................................................ 17

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)................................................................... passim

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)...................................................................... 14

*Kisor v. Wilkie*,
588 U.S. 558 (2019)............................................................................................... 10

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .................... 14

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .................... 9

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) .................... passim

*Martell v. Gen. Motors LLC*,
492 F. Supp. 3d 1131 (D. Or. 2020) .................... 23

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .................... 14, 16

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .................... 11, 12, 20

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) .................... 7

*Pareto v. FDIC*,
139 F.3d 696 (9th Cir. 1998) .................... 11

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. May 9, 2024) .................... 14, 15

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .................... 13

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .................... 9

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .................... 12

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .................... 15

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .................... 16, 17

**STATUTES**

18 U.S.C. § 2510(8) .................... 16

42 U.S.C. 1320d-2 .................... 10

42 U.S.C. § 1320d-6 .................................................. 10

**REGULATIONS**

45 C.F.R. § 164.508 .................................................. 8

78 Fed. Reg. (Jan. 25, 2013) .................................................. 11

## INTRODUCTION

Seeking fertility care is among the most private decisions an individual can make, implicating core expectations of confidentiality and bodily autonomy. Few categories of information carry greater privacy weight than a person's health status, reproductive choices, and related communications with a medical provider. *See Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998). This case arises because Defendant treated that sensitive information not as protected health information, but as marketing fodder.

Plaintiff alleges that Defendant—a healthcare provider—quietly embedded the LinkedIn Insight Tag on its Website and used that tool to duplicate and transmit patients' appointment and treatment-related communications to LinkedIn in real time. Plaintiff's Amended Complaint ("FAC") ECF No. 27, at ¶¶ 74–85. The data Defendant enabled LinkedIn to receive was not generic web analytics from a public facing website; it included personally identifiable information ("PII") and medical information revealing, among other things, that the user was seeking fertility services and the nature of the treatment requested (e.g. IVF). FAC ¶¶ 17–50, 74–85. By intercepting and disclosing this information to LinkedIn for marketing purposes, Defendant violated the Health Insurance Portability and Accountability Act ("HIPAA").

As a healthcare provider, Defendant is subject to strict duties under federal law, including HIPAA, which defines and protects individually identifiable health information ("IIHI"). This includes any data created or received by a healthcare provider that relates to a person's physical or mental health and identifies (or could reasonably be used to identify) that person. FAC ¶¶ 32–50. Critically, HIPAA protections attach to communications that may indicate patient status, including those that occur before the doctor-patient relationship is established, such as when a prospective patient navigates treatment-specific pages and submits a consultation booking form

requesting a medical appointment. FAC ¶ 20 ("These inputs constitute PHI because they identify the individual and relate to her future provision of fertility healthcare services, including specifically in-vitro fertilization"). Defendant's conduct flies in the face of its obligations.

These allegations describe a straightforward and unlawful use of patient health information for marketing without the express authorization required by both federal and Oregon law. HIPAA draws a clear line between routine healthcare operations and marketing disclosures requiring written authorization. *See* 45 C.F.R. § 164.508; FAC ¶¶ 17–50, 74–85. Defendant's conduct, as pled, falls squarely on the wrong side of these rules.

Indeed, courts in this District routinely recognize that such conduct is unlawful. *See K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (finding that the plaintiff had sufficiently pled the crime-tort exception, with a HIPAA violation being the predicate crime or tort). This case is no different. Defendant's motion to dismiss Plaintiff's First Amended Complaint (ECF No. 33) ("MTD") should be denied in its entirety.

## **LEGAL STANDARD**

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF PLAUSIBLY ALLEGES DEFENDANT VIOLATED FEDERAL LAW

Defendant's motion is premised upon a misapprehension of both law and fact: that Plaintiff cannot allege a violation of HIPAA, solely because its Website was public facing. *See generally* MTD at 7–11. That is wrong.

HIPAA imposes a criminal penalty for healthcare providers who knowingly[1] disclose individually identifiable health information ("IIHI") to third parties. IIHI is defined as:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider ... (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

FAC ¶ 123 (citing 42 U.S.C. § 1320d-6).

---

[1] Defendant's knowledge of its conduct violating HIPAA flows logically from the bedrock principle that every citizen is presumed to know the law. *See e.g., Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 266 (2020).

Critically, Congress expressly grants the Secretary of Health and Human Services the authority to adopt standards to safeguard such information. *See* 42 U.S.C. 1320d-2.[2] Pursuant to this authority, the Department of Health and Human Services has promulgated a number of rules and regulations intended to safeguard patients' health information. *See e.g.* FAC ¶ 43 (enumerating Defendant's failure to comply with various HIPAA safeguard regulations). The Department of Health and Human Services has made its stance clear—the definition of protected health information is intentionally broad. "[W]hen a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, future health or health care or payment for care." FAC ¶ 48, *see generally* FAC ¶¶ 45–49 (citing bulletins from the FTC and HHS warning healthcare providers against using tracking codes on their websites). This is true regardless of whether a patient attends their medical appointment. *Id.*

Plaintiff did not merely browse ORM's general homepage. She "navigated through ORM's IVF-specific treatment page (ormfertility.com/ivf-in-vitro-fertilization/) and clicked the 'Schedule Your Consult' button." FAC ¶ 18. This button-click alone resulted in Defendant intercepting and disclosing to LinkedIn that Plaintiff was scheduling a consultation—i.e., booking an appointment—for IVF—a medical treatment. *See, e.g.,* Figure 2. But Defendant's unlawful conduct did not stop there; the LinkedIn Insight Tag captured: the in-vitro fertilization URL path, the in-vitro fertilization page title; plaintiff's click on "Schedule Your Consult

[2] *Auer* deference remains good law. *Kisor v. Wilkie*, 588 U.S. 558 (2019).

Today"; the consultation form URL; the event "Form Submit" indicating that Plaintiff did in fact schedule her consultation appointment, the form-field identifiers (name, email, date of birth, address fields); and the LinkedIn member-ID linked cookies. FAC ¶ 29. When viewed in the aggregate, Defendant's disclosures are IIHI and go well beyond what the Department of Health and Human Services warns to be unlawful. *Compare* FAC ¶ 48 (Department of Health and Human Services Bulletin); *with* FAC ¶¶ 17–31. As alleged, "these data points constitute PHI because they identify Plaintiff and reveal that she sought fertility treatment, and specifically that she sought in-vitro fertilization with a particular medical provider – ORM." FAC ¶ 31. Although Defendant attempts to recharacterize Plaintiff's allegations, such conduct is improper in a motion to dismiss. *Compare* MTD at 3–4, 9–11; *with Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) ("The court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)).

The weight of the authority supports Plaintiff's position. *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022) (citing 78 Fed. Reg. 5642 (Jan. 25, 2013) ("observing that it would be a HIPAA violation for a covered entity to disclose a list of patient names, addresses, and hospital identification numbers because 'the protected health information is obviously identifiable'")); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024) ("Disclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable" (dismissed because the plaintiff did not allege she scheduled an appointment)); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) (CIPA claim for HIPAA violations on public facing website); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D.

Ill. Sept. 9, 2024); *I.T., et al v. ChoicePoint LLC*, 2:25-CV00193, ECF No. 26 (W.D. Wash. Aug. 29, 2025) ("whether the PHI was provided through a public webpage or patient portal is 'immaterial' and courts have found information that identifies an individual and relates to a health condition can support the HIPAA crime-tort exception for ECPA liability, regardless of whether a webpage was publicly accessible."); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *14 (W.D. Wash. Nov. 14, 2024) ("Costco may have collected data that 'relates to' Plaintiffs' individualized health conditions even though they do not allege that their data were collected while they were logged into their patient portals."); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) ("URLs pertain to appointments the Plaintiff made, and the transmitted URLs contain information regarding the specific symptoms, physical condition, or course of treatment of an individual."); *cf. Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 843 (E.D. Cal. 2025) ("individuals maintain a reasonable expectation of privacy in detailed URLs"); *Ramirez v. LasikMD USA, Inc.*, Case No. 3:24-cv-02221-CAB-DDL (S.D. Cal. Jan. 26, 2026) (ECF No. 26) (same).

Defendant's case law is unavailing. For example, the *Nienaber* Court recognized "disclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable." 733 F. Supp. 3d 1072, 1083 (W.D. Wash. 2024) (citing *Cousin,* 702 F.Supp.3d at 972-74; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *In re Meta Pixel Healthcare Litig.,* 713 F.Supp.3d 650 (N.D. Cal. 2024)) (granting the motion because the plaintiff did not "[tie] her actual activities to the allegations made by the hypothetical"). The present action is distinct from *Smith v. Facebook*, because here, by scheduling a consultation and submitting the form application, Plaintiff's actions on the Website to her individual healthcare.

*Compare Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018) (e.g. browsing cancer.net to read articles did not relate to "an individual"); *with* FAC ¶¶ 17–85 (detailing how Plaintiff's and Class Members' actions on the Website were connected with them seeking appointments). Plaintiff's allegations go beyond the mere search queries, as she selected the "Schedule a Consultation" button and submitted an appointment request form relating to her desired treatment (IVF) with a specific provider (Defendant ORM). FAC ¶¶ 17–31. Nothing more is required. FAC ¶ 48 (Department of Health and Human Services does not interpret HIPAA's privacy regulations as requiring "specific treatment or billing information").

## II. PLAINTIFF STATES A CLAIM UNDER THE ECPA

### A. Defendant Intercepted Plaintiff's Communications for a Criminal or Tortious Purpose

#### 1. Interception Is Separate From Disclosure

"Courts have applied the ECPA's crime-tort exception where the intentional disclosure of private information constituted a further impropriety independent and separate from [the] interception of private information." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) (internal quotation omitted); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 ("HIPAA violation is independent of the interception of Plaintiff's PHI").

Plaintiff further alleges that such disclosures of protected information occurred independent from Defendant's interception. *See, e.g.,* FAC ¶ 118 ("Specifically, Defendant *intercepted* Plaintiff's and Class Members' electronic communications through the LinkedIn Insight Tag, which tracked, stored *and unlawfully disclosed* Plaintiff's and Class Members' PII and PHI to third parties, such as LinkedIn.") (emphasis added). Such allegations are sufficient to establish that the alleged criminal or tortious act occurred independent from the interception

itself. *See Legacy Health*, 2024 WL 4794657, at *6 ("The Court agrees with the line of cases finding that violating HIPAA *can* constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *R.C. v. Walgreen Co.,* 733 F.Supp.3d 876, 901 (C.D. Cal. May 9, 2024) (same).

Plaintiff's allegations are clear: Defendant's disclosure of her PHI and PII was separate and independent from the interception. *See e.g.* FAC ¶¶ 3, 10–11, 32, 46, 70–85, 120–21 (explaining Defendant violated the ECPA by intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to LinkedIn while knowing or having reason to know that the information was obtained through the interception of an electronic communication). The majority of courts to consider this issue, including this Court, have found substantially similar allegations sufficient to trigger the crime-tort exception. *See B.N. v. Oregon Reproductive Medicine, LLC*, 3:25-CV-00202-IM, ECF No. 26 at 7–9*; Legacy Health*, 2024 WL 4794657, at *6; *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception); *see also In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and

appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws"). Indeed, Defendant had no lawful basis for intercepting and disclosing Plaintiff's legally protected PII, PHI, and medical information to LinkedIn in violation of HIPAA. FAC ¶¶ 17–31, 74–85.

**2. Defendant Cannot Escape Liability By Alleging A Commercial Purpose**

Defendant argues that Plaintiff's claims under the Wiretap Act fails because "[Defendant's] purpose for installing the Insight Tag was purely for commercial purposes." MTD at 6, n. 1. That is wrong.

This argument has consistently been rejected by courts across the country. *See Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) at *6 ("The existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive."); *Cooper v. Mount Sinai Health Systems, Inc.,* 742 F.Supp.3d 369, 381-82 (S.D.N.Y. July 30, 2024) (finding the plaintiff's allegations "plausibly support the inference that [defendant], for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain."); *R.C. v. Walgreen Co.,,* 733 F.Supp.3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law.").

Further, while Defendant maintains its "purpose for installing the Insight Tag was purely commercial[,]" Defendant's knowledge of its unlawful use violating HIPAA flows logically from the bedrock principle that every citizen is presumed to know the law. MTD at 6, n.1; *see e.g.*, *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 266 (2020).

### B. <u>Plaintiff Alleges that the "Contents" of her Communications Were Transmitted Through the LinkedIn Insight Tag</u>

Defendant argues that Plaintiff's ECPA claim must be dismissed because "the Complaint does not allege any facts showing that the ***contents*** of a communication were disclosed to LinkedIn or any third party." MTD at 11. That is wrong.

Under the ECPA, "content" includes "any information ***concerning the substance, purport, or meaning of that communication.***" 18 U.S.C. § 2510(8); *see also Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (content refers to "the intended message conveyed by the communication . . . not includ[ing] record information regarding the characteristics of the message that is generated in the course of the communication."); *see also Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

Federal District Courts throughout the Ninth Circuit recognize the ECPA broadly defines content, and that tracking technologies—like the LinkedIn Insight Tag—intercept "contents" when they reveal the substance of health queries between a patient and healthcare provider. *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 795–96 (observing that "log-in buttons and . . . descriptive URLs . . . are 'contents' within the meaning of the statute . . . because they concern the substance of the communication"); *Mekhail*, 726 F.Supp.3d at 926 (allegations "that substantive information, including details about medical appointments, conditions, and treatments, was obtained via the Pixel" sufficiently "pleaded that 'contents' were intercepted."); *cf. In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (contents include "URL of the page where the impression will be shown" and the "referrer URL that caused navigation to the current page"); *see also Jackson v. LinkedIn Corporation*, 744 F.Supp.3d 986, 994 (N.D. Cal. Aug. 13, 2024) (denying motion to dismiss where the plaintiff

alleged that the defendant "disclosed her personal information using the Insight Tag [and] also that LinkedIn received this sensitive data and read and used it for its own marketing services"); *cf. Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 843 (E.D. Cal. 2025) ("courts recognize that 'individuals maintain a reasonable expectation of privacy in detailed URLs.) (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605–06 (9th Cir. 2020)).

For example, the "post-domain name portions" of website URLs—path and query string URLs (that is, everything after ".com")— disclose details about the webpages requested and constitute "content" under the ECPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user."). Courts within the Ninth Circuit have agreed both path and query string URLs, which show how a specific user navigates a website—whether that be through search terms ***or button clicks***—constitute contents. MTD at 12 (recognizing query strings may be contents); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 ("the transmitted URLs [which] include both the 'path' and the 'query string' . . . . are content because they concern the substance of a communication"); *see also Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *6 (N.D. Cal. Dec. 30, 2024) ("[T]he button click data associated with . . . titles are contents.").

Here, Plaintiff has demonstrated that Defendant—by embedding the Insight Tag on its Website —intercepted and disclosed its patients' PII, PHI, and related communications while scheduling consultations (i.e. medical appointments) for fertility services. Through this technology, Defendant discloses and LinkedIn intercepts full-length URLs containing terms that allow it to learn which pages Plaintiff viewed and the buttons she clicked, which Defendant

knew, when taken in the aggregate, would result in the interception and disclosure of her patient status, PII, and PHI to LinkedIn. FAC ¶¶ 76–85, Figs. 1–3; *supra-Section* I. Courts facing similar motions to dismiss have repeatedly held that tracking technologies, like the LinkedIn Insight Tag, intercept the contents of communications. *See, e.g., In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 795 ("the log-in buttons" and "descriptive URLs . . . are 'contents' within the meaning of the statute.").

Defendant's own case law undermines its argument. *Compare Cousin v. Sharp Healthcare*, 3:22-CV-02040, ECF No. 23 at ¶ 42 (***defendant's website is public facing***), ¶ 45 (patient clicks a button to find a doctor), ¶ 58 (patient clicks a button titled "Book appointment"), ¶ 59 (URL value showing doctor's name from patient's button clicks); *with Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("here Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI"). Indeed the Ninth Circuit in *In re Zynga Privacy Litigation* explained "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to a disclosure of the contents of a communication." 750 F.3d 1098, 1108 (9th Cir. 2014) (refusing to hold *identifiers*, [i.e., record information] disclosed in a URL were contents). Defendant's remaining case law is similarly unpersuasive. *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal 2015) (plaintiffs only alleged record information (e.g. a user identifier) was disclosed); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 *on reconsideration in part,* 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (lack of specificity).

## III. PLAINTIFF STATES A CLAIM FOR NEGLIGENCE

Defendant argues that Plaintiff fails to state a claim for negligence because she "has not adequately plead a breach." MTD at 13. That is wrong.

Plaintiff alleges that "she booked consultations for fertility services using Defendant's Website." FAC ¶ 7. Once again, Defendant's entire argument is wrongfully premised on general browsing of websites, as opposed to using a website to book a consultation for fertility services—i.e., a ***medical appointment.*** Further, the Department of Health and Human Services has warned healthcare providers—such as Defendant—against including tracking technologies on their websites because the conduct de facto connects patients to their healthcare providers, resulting in unlawful HIPAA violations. FAC ¶¶ 32–45, 48–49. Defendant therefore breached its duty of confidentiality by disclosing its' patients sensitive and confidential health information to LinkedIn. FAC ¶¶ 132–140.

Plaintiff also details exactly how Defendant intercepts its patients' confidential communications through the LinkedIn Insight Tag and how it discloses such information to LinkedIn. FAC ¶¶ 74–85, Figs. 1–3. As patients, like Plaintiff, navigate Defendant's Website, Defendant discloses the specific fertility treatment they are seeking, and discloses the fact that they have scheduled a consultation to receive such treatment. *Id.* Plaintiff further alleges that "Defendant's breaches of duty caused Plaintiff and Class Members to, inter alia, have their data shared with third parties without their authorization or consent." FAC ¶ 143. Oregon courts are in accord that such allegations are sufficient to state a claim for negligence. *See Legacy Health*, 2024 WL 4794657, at *10; *Salem Health*, 2024 WL 3970796, at *7–8.

Defendant's argument falls flat. Fatal to its argument is Defendant's mischaracterization of Plaintiff's PHI and PII as mere "browsing data," contrary to the weight of the authority. *See,*

*e.g., Nienaber*, 733 F.Supp.3d at 1083; *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (citing *Doe v. Beard*, 63 F. Supp. 3d 1159, 1169-70 (C.D. Cal. 2014); *Doe v. Regents of Univ. of California*, 672 F.Supp.3d 813, 820-21 (N.D. Cal. May 8, 2023)) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person, and I see no reason to deviate from that norm."). Defendant's reliance on *B.K. v. Eisenhower Med. Ctr.* is similarly misplaced[3] as the court dismissed the plaintiff's CMIA allegations because the plaintiff's allegations "lack[ed] specificity" as to the information allegedly disclosed, and their negligence claims were dismissed on a theory of commercial gain alone being insufficient. 721 F.Supp.3d at 1064, 1069 ("The Court has already rejected [misuse of private information be and loss of value] arguments").

## IV. PLAINTIFF STATES A CLAIM FOR BREACH OF CONFIDENCE

Defendant argues that Plaintiff fails to state a claim for breach of confidence because she "has failed to allege any facts showing that her medical information was actually transmitted to LinkedIn or any other third party." MTD at 14. This claim directly conflicts with Plaintiff's allegations. Rather than relying on legal authority to support its argument, Defendant once again relies on misstatements of fact. As discussed, *supra*, Plaintiff has detailed at length the ways in which Defendant intercepted and disclosed Plaintiff's confidential communications, including communications detailing her medical appointment information, contrary to its duty as a healthcare provider. FAC ¶ 2, 10–11, 17–50, Figs 1–3. Such allegations are sufficient to state a

[3] Defendant's reading of *B.K.* is overbroad. There, the court dismissed the plaintiffs' ***CMIA*** claims for lack of specificity. *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024). Contrastingly, the *B.K.* plaintiffs' wiretapping claims were dismissed because their claims relied on allegations of commercial gain while the underlying HIPAA allegations lacked specificity. On motion for reconsideration, the *B.K.* court granted the plaintiffs leave to amend their wiretapping claims because they could viably allege HIPAA as the basis for the crime tort exception. 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024).

claim for breach of confidence. *See* FAC ¶ 48 (HHS explaining "even if the individual does not have an existing relationship with the regulated entity and . . . . does not include specific . . . information like dates and types of health care services [this still violates HIPAA because] when a regulated entity collects the individual's IIHI through its website . . . the information connects the individual to the regulated entity"); *Legacy Health*, 2024 WL 4794657, at *4; *Salem Health*, 2024 WL 3970796, at *5; *see also In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 799 (finding that patient status itself is a form of PHI protected by HIPAA). Defendant's baseless assertion that no medical information was disclosed should be rejected.

## V. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT

Defendant asserts that Plaintiff's unjust enrichment claim must be dismissed "because equitable relief, such as restitution, is not available where an adequate remedy at law exists." MTD at 14. That is wrong.

As a preliminary matter, Oregon courts have interpreted Rule 8 as permitting "parties at this stage of litigation to plead various claims in the alternative." *Legacy Health*, 2024 WL 4794657, at *4. Critically, whether monetary damages as a remedy at law are adequate for LinkedIn's continued possession of Plaintiff's PHI is unknown at the pleading stage. *Id.* at *9 ("Although it is possible that monetary damages as a remedy at law may be adequate, it would be premature to make that determination at the motion to dismiss stage."); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *7 (D. Or. Aug. 28, 2024) (collecting cases); *Martell*, 492 F. Supp. 3d at1148 (same).

Defendant's argument that "Plaintiff has not sufficiently alleged the financial gain" is without merit. Plaintiff alleges precisely how Plaintiff and Class Members' private information

has value, FAC ¶¶ 86–94, and how Defendant's unauthorized disclosure of their health data unjustly benefited Defendant. FAC 160–61. For example, Plaintiff alleges:

> Plaintiff and Class Members conferred a benefit upon Defendant in the form of PII and PHI that Defendant collected from Plaintiff and Class Members, without authorization and proper compensation to exceed the limited authorization and access to that information which was given to Defendant. Defendant exceeded any authorization given and instead consciously disclosed and used the information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation. Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.

FAC ¶¶ 161–63. Additionally, "[t]he benefits that Defendant derived from Plaintiff and Class Members [were] not offered by Plaintiff and Class Members gratuitously and rightly belongs to Plaintiff and Class Members. It would be against equity and good conscience for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint." FAC ¶ 164. Such allegations are sufficient to state a claim for unjust enrichment at this early stage. *Salem Health*, 2024 WL 3970796, at *7 ("The Complaint alleges that the benefit conferred was medical information of patients; that Defendant took affirmative steps to collect it; and that it would be unjust for Defendant to retain the benefit from selling this information to advertisers. This amounts to a plausible claim for unjust enrichment.").

Defendant's own authority does not foreclose the possibility of a plaintiff seeking legal and equitable relief. *See Alesa Veneer, Inc. v. State*, 318 Or. 33, 862 P.2d 95, 100 (1993) (finding that "[e]quitable relief is appropriate here, because the remedy in damages is not an adequate remedy."); *compare In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (N.D. Cal.

Mar. 12, 2014) (out of district case relating to manufacturing and design defects); *with M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *7 (declining to dismiss an unjust enrichment claim under analogous facts to the present action); *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1148 (D. Or. 2020) (denying motion to dismiss unjust enrichment claim and stating, "[a]t this stage of the litigation, it is unknown whether the remedy at law [is sufficient practical, efficient, and adequate]").

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

Dated: January 27, 2026

Respectfully Submitted,

By: */s/ Stephen Beck*

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
Stephen A. Beck (admitted *pro hac vice*)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot (*pro hac vice* forthcoming)
Stephen A. Beck (admitted *pro hac vice*)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff*