Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Jenna M. Teeny, OSB No. 244519
jteeny@swlaw.com
Patricia Brum (*pro hac vice*)
pbrum@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
Telephone: 503.624.6800
Facsimile: 503.624.6888

Attorneys for Defendant Oregon Reproductive
Medicine, LLC d/b/a/ ORM Fertility

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

B.N., individually and on behalf of all others similarly situated,

Plaintiff,

v.

OREGON REPRODUCTIVE MEDICINE, LLC d/b/a/ ORM FERTILITY,

Defendant.

Case No. 3:25-cv-00202-IM

DEFENDANT OREGON REPRODUCTIVE MEDICINE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility ("ORM Fertility") hereby replies in further support of its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 33 (the "Motion").

**MEMORANDUM**

## I. INTRODUCTION

On a motion to dismiss, courts must separate well-pleaded facts from unsupported legal conclusions and decline to credit the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff's First Amended Complaint ("Amended Complaint") fails that basic test. As with her original Complaint, Plaintiff offers conclusory assertions—rather than factual allegations—purporting to show that ORM Fertility disclosed her protected health information ("PHI") to LinkedIn. Unable to cure this defect, Plaintiff instead stretches the definition of PHI to encompass generic website activity, claiming that data reflecting a visit to a non-authenticated informational page and a click on a general inquiry form constitutes protected health information. That theory finds no support in law or in the facts alleged and warrants dismissal. *See* Opinion and Order Granting Def.'s Mot. to Dismiss ("Order") at 10–12; *see also K.L. v. Legacy Health*, 3:23-cv-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (holding data collected from public-facing pages as not actionable, in contrast to data collected from a patient portal); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024) (disclosing public browsing data, including viewing appointment scheduling pages, is not actionable).

Notably, Plaintiff still does not allege that she accessed a patient portal or revealed information showing that she specifically sought medical treatment. Nor does she plausibly allege that the Insight Tag collected actual PHI. The Amended Complaint adds no facts that would suggest that ORM Fertility disclosed that she was a past, current, or prospective patient. Nothing suggests that the Insight Tag collected data relating to her scheduling an appointment at a certain date and time, what treatment she sought, what doctor she wanted to see, her payments, or if she



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

had a patient portal account. Without disclosing this information, no PHI could have been transmitted.

Plaintiff's failure to plausibly allege facts to support her legal conclusion that ORM Fertility disclosed her PHI is fatal to her claims for violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510 ("Wiretap Act") (Count I), negligence (Count II), breach of confidence (Count III), and unjust enrichment (Count IV). Further amendment would be futile. The Court should dismiss all claims, without leave to amend, with prejudice.

## II. ARGUMENT

### A. Motions To Dismiss Properly Attacks Implausible Allegations and Faulty Legal Conclusions.

Plaintiff suggests that ORM Fertility's motion rests on a misreading of her allegations. It does not. ORM Fertility asks only that the Court do what Rule 12 requires: assess whether Plaintiff's allegations are plausible and whether they state legally sufficient claims. Because Plaintiff's claims fail under that governing standard, dismissal is warranted.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Although the Court takes all material allegations as true and construes them in the light most favorable to the plaintiffs, the Court need not accept legal conclusions, including "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The allegations made in a complaint "must plausibly suggest an entitlement



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**B. Plaintiff's Wiretap Act Claim Fails.**

To state a claim under the Wiretap Act, a plaintiff must plausibly allege that the defendant intercepted the contents of her electronic communications. *See* 18 U.S.C. § 2511. Plaintiff does not. Because the Amended Complaint fails to allege facts supporting the essential elements of interception and contents, her Wiretap Act claim must be dismissed.

1. No Interception Occurred, and the Crime-Tort Exception is Inapplicable.

Plaintiff acknowledges that she cannot meet the "interception" element unless the crime-tort exception applies. *See* Plf.'s Mem. of Law in Opp. to Def. Oregon Reproductive Medicine's Mot. to Dismiss Plf.'s First Am. Compl. ("Response") at 13–14. Under the crime-tort exception, a party to a communication can unlawfully intercept the message's contents only if it does so "for the purpose of committing any criminal or tortious act." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (quoting 18 U.S.C. § 2511(2)(d)). The crime or tort must be independent of the interception itself—in other words, the *interception* cannot be the crime or tort. *See In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 145 (3d Cir. 2015). Here, Plaintiff alleges that ORM Fertility's purpose in permitting the LinkedIn Insight Tag was to commit HIPAA violations. The Court should not accept this allegation at face value.

As a preliminary matter, ORM Fertility had no nefarious or malicious intent to collect and impermissibly share Plaintiff's PHI.[1] Plaintiff does not appear to allege this either. Instead, Plaintiff entirely relies upon a legal argument that ORM Fertility's subjective intent is irrelevant. *See* Response at 15. Rather, she argues that the "purpose" element is satisfied if ORM Fertility's alleged transmittal of Plaintiff's browsing data to LinkedIn meets the prima facie elements of a

[1] ORM Fertility maintains that its purpose was purely for commercial purposes and that an alleged HIPAA violation is not an independent act sufficient to establish the crime-tort exception. Because the Court previously ruled on this issue, ORM Fertility will not again brief the issue at this stage of the litigation, but reserves the right to do so at a later date.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

HIPAA violation. *See id.* However, Plaintiff has alleged no facts consistent with ORM Fertility having committed a HIPAA violation.

On the face of the Amended Complaint, Plaintiff alleges no facts supporting a HIPAA violation. To establish that ORM Fertility violated HIPAA, Plaintiff needed to allege facts consistent with ORM Fertility disclosing her identity along with information that "relates to the past, present, or future physical or mental health or condition of an individual; the provision of healthcare to an individual; or the past, present, or future payment for the provision of health care to an individual." *Legacy Health*, 2024 WL 4794657, at *3 (citing 45 C.F.R. §160.103). "Relating to" a person's medical treatment, however, is not limitless. *See* Order at 10. Browsing data from a public-facing medical website that "could be 'indicative'" that the person has a medical or health condition, sought treatment, or paid a provider is not enough. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 801 (N.D. Tex. 2024). Rather, that data would need to allow a third party to determine that there is definitely a connection between the person's visit and their medical conditions, treatment, or payments. *Id.* This is a matter of statutory interpretation, as aptly summarized by the court in *American Hospital Association v. Becerra*:

> PHI … must "relate[ ] to" a listed category of information … Congress could have said "*may* relate to." It could have said "*might* relate to." It could have said "relates to *or is indicative of*." It didn't. Thus, without *knowing* a particular query relates to a [person's medical conditions, treatment, or payments], metadata … cannot constitute IIHI.

*Id.* at 802 (emphasis in original). That is why courts across the country, and in this circuit, agree that the line between permissible and impermissible disclosures generally stands at the point of when a person crosses the public-facing site by logging into a patient portal. *See e.g.*, Order at 11; *Legacy Health*, 2024 WL 4794657, at *4 (holding that "generic search queries created during such browsing activity [on healthcare provider's website] … do not constitute PHI"); *Harrill v. Emanuel Med. Ctr.*, No. 2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *4-*5 (E.D. Cal. June 9, 2025) (holding browsing activity on unauthenticated webpages was not PHI); *Nienaber*, 733 F.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Supp. 3d at 1084 (same). Indeed, without this sort of specific information about the person's relationship with the provider, it would be impossible to know for sure whether the person visited the website for reasons related to education, employment, or general interest. *Becerra*, 738 F. Supp. 3d at 801. That is why courts in this circuit agree that "clicks" and visiting appointment inquiry forms are simply not enough. *See, e.g.*, *Nienaber*, 733 F. Supp. 3d at 1084. Indeed, "where nothing but browsing activity on a publicly available website is transmitted, courts within this circuit have held that the URLs, or the content of the pages located at those URLs, do not relate to the past, present, or future physical or mental health or condition of an individual." *Id.* at 1082 (internal punctuation omitted). In other words, transmission of interactions must rise above the level of passive browsing to communicate something specific about the plaintiff. *See id.* at 1083 (distinguishing *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 972-74 (S.D. Cal. 2023)).

Plaintiff alleges no such conduct here. Instead, she claims only that ORM Fertility transmitted data reflecting which webpages users visited—pages that merely describe potential fertility treatments ORM Fertility offers and, at most, suggest a general interest in booking a generic consultation, not that any consultation was actually scheduled through the "Schedule Your Consult" form.

The Amended Complaint contains no allegations describing what occurred after Plaintiff allegedly submitted the form. *See* Amended Compl. ¶¶ 18-19. That omission is telling because the form includes no fields for the purported consultation's date, time, provider, or even the specific treatment the consultation would be about. Given those undisputed features, Plaintiff's assertion that she "scheduled an IVF consultation on ORM's website" is implausible. The far more plausible inference is that she submitted a general request for a call back, and that any scheduling of consultation, discussion of treatment options, her medical history, and thus disclosure of her protected health information occurred later during a follow-up call.[2]

[2] Plaintiff does not disclose the "exact precise of the treatment she received from ORM." Amended Complaint at 3 n. 1. Accordingly, her own allegations do not establish that the consultation she claims to have scheduled concerned IVF treatment rather than fertility treatment options generally.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

2. Clicks are not "contents" of any communication.

Plaintiff still does not allege any facts that suggest that ORM disclosed the "contents" of her communications to LinkedIn. "Contents" under the Wiretap Act must be "information concerning the substance, purport, or meaning" of a communication. 18 U.S.C. § 2510(8). Simple URL paths of public facing websites are not communications under the Wiretap Act. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). A "webpage address identifies the location of a webpage a user is viewing on the internet, and therefore functions like an 'address' … Congress excluded this sort of record information from the definition of 'contents.'" *Id.* Nor does divulging a user's history of webpage browsing from one URL to the next reveal "contents" of the user's communications. *Id.* ("The … information … transmitted to third parties included … the address of the webpage from which the user's HTTP request to view another webpage was sent. This information does not meet the definition of 'contents,' because … [it is] not the 'substance, purport, or meaning' of a communication.").

Courts contrast this with situations where a user types in content—*i.e.* more than a click—and that content shows up in the URL as a query string. *See Cousin*, 702 F. Supp. 3d at 976. A query string, in essence, discloses the what a person has typed into a search bar, such as "https://www.medstarheatlh.org/sxa/search/results/?q=diabetes." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 n.10 (N.D. Cal. 2022). The cases that Plaintiff cites in her Response follow this trend—that a URL does not contain "contents" of a communication if the user did not influence the link's contents. *See id.*; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) ("Plaintiffs' alleged communications … go beyond 'keystrokes, mouse clicks, [and] pages viewed … [i.e.] more than basic identification and address information."). Plaintiff's other cited cases are inapposite here. *See e.g.*, *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) (does not analyze what qualifies as "contents" under the Wiretap Act, or CIPA); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 926 (D. Minn. 2024) (noting that the plaintiff alleged facts going "much farther" beyond simple disclosure of URLs, because she alleged that information from her private patient portal, "including details about medical



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

appointments, conditions, and treatments," was disclosed); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) (does not concern healthcare, HIPAA, or disclosure of PHI or meaningfully discuss the "contents" standard).

Plaintiff's allegations do not rise to the level of plausibly suggesting that the Insight Tag intercepted any "substance" of her communications. For one, Plaintiff's allegations are clearly record information, not queries. She alleges that she clicked on generic public-facing website pages like "https://ormfertility.com/general-fertility/" and "http://ormfertility.com/ivf-in-vitrofertilization/," and that she submitted a general inquiry form. *Id.* ¶¶ 29, 76 at 23-24.

Plaintiff argues that her allegations rise above the level of ORM Fertility disclosing just the webpage URLs she looked at, but the face of the Amended Complaint demonstrates otherwise. The Amended Complaint does not contain any allegation that ORM Fertility transmitted any of Plaintiff's search queries to LinkedIn. She provides pictures in her Complaint that allegedly show how the LinkedIn tag records clicks on ORM Fertility's public-facing website. Amended Compl. ¶ 76. Specifically, these pictures allegedly show that the user clicked on a link to a general information page titled "IVF – IN VITRO FERTILIZATION," a link titled "SCHEDULE YOUR CONSULT TODAY," which navigates to a blank request for consultation form. *Id.* The images do not show that ORM Fertility transmitted any of the information that might insert into the form, like information input into the generic "How Can We Help You?" or "Message" boxes. *See id.* In her Response, Plaintiff claims that these images "disclose[] the specific treatment they are seeking, and discloses they have scheduled a consultation to receive such treatment'" but nothing in the images she provides appear to support that conclusion. *See* Response at 19. In fact, nothing about the form submission page mentions IVF treatment. *See* Amended Compl. ¶ 76. Rather, the form appears to reside on a page with the URL "https://ormfertility.com/general-fertility/." *See id.* In sum, her Complaint alleges nothing more than that ORM Fertility allowed LinkedIn to see the webpage URLs she viewed and clicked on, which is not "content" under the Wiretap Act.



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

Plaintiff cannot establish that ORM Fertility "intercepted … the contents" of her electronic communications. No amendment can remedy this failing. Plaintiff's Wiretap Act claim should be dismissed with prejudice, without leave to amend.

**C. Plaintiff's Negligence Claim Fails.**

Plaintiff does not—and cannot—plausibly allege that ORM Fertility ever disclosed Plaintiff's *protected information* to LinkedIn. Accordingly, because there was no breach of this duty, Plaintiff's negligence claim fails as a matter of law.

Plaintiff has not alleged that any medical records, correspondence, medical information, diagnosis, or treatment records were ever provided to LinkedIn. Information like browsing history on a public facing website is not protected information. *See Legacy Health*, 2024 WL 4794657, at *4. Plaintiff's allegation that ORM Fertility transmitted this unprivileged data is thus insufficient to specifically allege an improper disclosure of protected information. *See, e.g. B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) ("Plaintiffs allege that they started to receive unsolicited advertisements on their Facebook accounts relating to their medical conditions shortly after visiting the Website … However, Plaintiffs fail to allege what, if any, medical information or medical records were transmitted or disclosed.").

Plaintiff alleges that she "booked consultations" on the website but, as discussed above, at best she submitted a general inquiry form that requested a call back. *See* Amended Compl. 76. She never connects the dots to plausibly allege that ORM Fertility disclosed her actual appointment information. *See* Response at 13 (alleging that the general inquiry form merely was "relating to her desired treatment," not that using the form *disclosed* her desired treatment to the Insight Tag). Through photos, she alleges that ORM Fertility disclosed the simple fact that users accessed its webpages. *See* Amended Compl. ¶ 76. But nowhere in her Amended Complaint does she state that ORM Fertility disclosed any actual personal information that she affirmatively provided to ORM Fertility. Plaintiff does not plausibly allege that ORM Fertility disclosed the specific fertility treatment she allegedly sought or received, because it is premised on a faulty inference—that data showing that she viewed an IVF webpage and submitted a general inquiry form demonstrates that



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

she was seeking IVF treatment. This does not follow. The images she cites to support that unsupported inference show only the public facing ORM Fertility webpage, with no personal information attached or included. *Id.* Plaintiff's allegation that she subsequently saw advertisements about IVF at best suggests that LinkedIn deduced that she had an interest in IVF based on her browsing history on a public-facing website.

Plaintiff's Amended Complaint is unlike the plaintiff's complaint in *Legacy Health*, 2024 WL 4794657. In *Legacy Health*, the plaintiff "allege[d] that information from both the public *and private* faces of the website contributed to the targeted advertising." *Id.* at *10 (emphasis in original). This crucial allegation saved her complaint from dismissal. *Id.* Here, Plaintiff does not make this key assertion. Accordingly, she has not sufficiently alleged a link to the purported advertising and has failed to specifically plead a breach. Her negligence claim must be dismissed.

**D. Plaintiff's Breach of Confidence Claim Fails.**

Plaintiff's failure to allege that ORM Fertility transmitted her confidential medical information is fatal to her breach of confidence claim. Alleging "unauthorized and unprivileged disclosure of confidential information obtained in a confidential relationship" is essential. *See Humphers v. First Interstate Bank of Oregon*, 298 Or. 706, 696 P.2d 527 (1985). Plaintiff misses the mark here.

In her Response, Plaintiff asserts she "detailed at length the ways in which [ORM Fertility] intercepted and disclosed Plaintiff's confidential communications, including communications detailing her medical appointment information." Response at 20. But, as demonstrated above, her Amended Complaint falls short of actually alleging that ORM Fertility transmitted any information she put into its website through queries or other forms of communication. Nor does she allege that ORM Fertility disclosed any of her communications with her doctors, or any of her private patient portal information. All that exists is a speculative leap—that her medical history was revealed because LinkedIn might have seen that she viewed general information discussing a procedure she subsequently may have engaged ORM Fertility to perform. None of this constitutes an



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800

"unprivileged disclosure of confidential information obtained in a confidential relationship." Plaintiff's breach of confidence claim must be dismissed without leave to amend.

**E. Plaintiff's Unjust Enrichment Claim Fails.**

Plaintiff's unjust enrichment claim is premised on the same faulty legal conclusion as her other claims: that users' views and clicks on ORM Fertility's publicly accessible webpages constitute protected health information. That is incorrect. *See, e.g.*, *Legacy Health*, 2024 WL 4794657, at *4 ("generic search queries created during such browsing activity … do not constitute PHI"); *Nienaber*, 733 F. Supp. 3d at 1084 (browsing data is not PHI). As discussed at length above, Plaintiff fails to allege that ORM Fertility disclosed any of her PHI—her search queries, her medical appointment information, or details directly concerning and confirming that she received particular medical treatments. The crux of an unjust enrichment claim is that the defendant unjustly retains a benefit conferred by the plaintiff. Plaintiff cannot and does not allege that ORM Fertility acted unjustly when it allegedly allowed LinkedIn to view users' unprotected browsing data for commercial purposes.

**CONCLUSION**

For the reasons stated above, the Court should dismiss Plaintiff's claims for violation of the Wiretap Act (Count I), negligence (Count II), breach of confidence (Count III), and unjust enrichment (Count IV) with prejudice and without leave to amend.

DATED this 10th day of February, 2025.

SNELL & WILMER L.L.P.

*/s/ Clifford S. Davidson*
Clifford S. Davidson, OSB No. 125378
Jenna M. Teeny, OSB No. 244519
Patricia Brum (*pro hac vice*)

Attorneys for Defendant Oregon Reproductive Medicine, LLC d/b/a/ ORM Fertility

4937-0632-5901



Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204-3229
503.624.6800