**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **B.N.**, individually and on behalf of all others similarly situated, | Case No. 3:25-cv-00202-IM |
| Plaintiff, | **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| **OREGON REPRODUCTIVE MEDICINE, LLC**, d/b/a ORM Fertility, | |
| Defendant. | |

Cody Hoesly, Barg Singer Hoesly PC, 121 SW Morrison Street, Suite 600, Portland, OR 97204. Stephen A. Beck, Bursor & Fisher, P.A., 701 Brickell Avenue, Suite 2100, Miami, FL 33131. Attorneys for Plaintiff.

Clifford S. Davison, Jenna M. Teeny, & Patricia Brum, Snell & Wilmer LLP, 601 SW Second Avenue, Suite 2000, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff B.N. brings this putative class action against an Oregon-based fertility clinic, Defendant Oregon Reproductive Medicine, LLC ("ORM" or "Defendant"), alleging that Defendant's website intercepted patients' protected health information and disclosed it to LinkedIn without patients' knowledge or consent. First Amended Complaint ("FAC"), ECF 27.

PAGE 1 – OPINION AND ORDER ON MOTION TO DISMISS

Plaintiff asserts four claims: (1) a violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1); (2) negligence; (3) breach of confidence; and (4) unjust enrichment. Defendant moves to dismiss all four claims under Federal Rule of Civil Procedure 12(b)(6). Motion to Dismiss ("MTD"), ECF 33. Plaintiff filed a response opposing the motion ("Opp'n"), ECF 34, to which Defendant replied, ECF 35. This Court previously dismissed Plaintiff's Complaint, ECF 1, with leave to amend. Order Granting Motion to Dismiss with Leave to Amend ("Order"), ECF 26.

For the reasons discussed below, this Court concludes that at this stage, Plaintiff has adequately pleaded all four claims with respect to her personally. Defendant's Motion to Dismiss, ECF 33, is denied.

**BACKGROUND**[1]

Defendant ORM is a healthcare provider in Portland, Oregon, that offers fertility services and treatments. FAC, ECF 27 ¶ 13. Defendant operated a public website, www.ormfertility.com ("Website"), through which visitors could learn about ORM facilities and services and book consultations. *See id.* ¶¶ 1, 13, 74.

Plaintiff lives in Portland, Oregon, and is a patient of Defendant. *Id.* ¶¶ 7–8. Plaintiff learned about Defendant due to the proximity of one of its clinics to her residence. *Id.* ¶ 8. Around May 2022 and March 2024, Plaintiff went directly to Defendant's Website and booked consultations for fertility services, specifically, in-vitro fertilization ("IVF"). *Id.* ¶¶ 7, 9, 20. She scheduled an IVF consultation on Defendant's website by navigating through ORM's IVF-specific treatment page and clicked the "Schedule Your Consult" button. *Id.* ¶ 18. Plaintiff

---

[1] For purposes of the motion to dismiss, this Court takes Plaintiff's allegations, summarized here, as true.

accessed Defendant's consultation booking form and entered her full name, email address, phone number, date of birth, city, state, and zip code. *Id.* ¶ 19. She did not search for fertility treatment or clinics online before or after visiting the Website. *Id.* ¶ 8. On an unknown date, Plaintiff attended a consultation and received fertility treatment services from Defendant. *Id.*

Plaintiff also maintained an active LinkedIn account. *Id.* ¶ 9. She used the same device and browser to access the Website and her LinkedIn account. *Id.* After visiting Defendant's Website, Plaintiff received targeted advertisements relating to fertility services on LinkedIn in November 2024. *Id.* ¶¶ 7, 9.

Plaintiff alleges Defendant embedded a piece of code known as the LinkedIn Insight Tag on its Website. *Id.* ¶ 13. Plaintiff alleges the Insight Tag is a tracking technology that allows LinkedIn to intercept and record "click" events, which display information about which page a website user browsed and selections on those pages. *Id.* ¶ 76. When a user who has signed into LinkedIn browses a website that has the LinkedIn Insight Tag embedded, the Insight Tag sends requests about the user's actions on the website to LinkedIn. *Id.* ¶¶ 60–62. Plaintiff alleges that LinkedIn's advertising system does not receive information based on searches conducted on external websites, but rather, relies exclusively on information it receives through LinkedIn's own first-party tracking technologies such as the Insight Tag. *Id.* ¶ 84. Plaintiff alleges that here, the Insight Tag captured (1) the in-vitro fertilization URL path, (2) the in-vitro fertilization page title, (3) Plaintiff's click on "Schedule Your Consult Today," (4) the consultation form URL, (5) the event "Form Submit" indicating that Plaintiff did in fact schedule her consultation appointment, (6) form-field identifiers (name, email, date of birth, address fields), and (7) LinkedIn member-ID linked cookies. *Id.* ¶ 29. So in sum, Plaintiff alleges the LinkedIn Insight

PAGE 3 – OPINION AND ORDER ON MOTION TO DISMISS

Tag recorded her personal information and that she scheduled an IVF consultation. *Id.*; *see id* at 21–22 figs. 1–3, ¶ 76.

Plaintiff again alleges that, through the LinkedIn Insight Tag, Defendant allowed third parties such as LinkedIn to intercept communications that included protected health information ("PHI"), including information related to specific fertility treatment she received at ORM, without Plaintiff's consent. *Id.* ¶¶ 10, 20, 77, 81. Plaintiff alleges this conduct violated various provisions of the Health Insurance Portability and Accountability Act ("HIPAA"), *id.* ¶¶ 37, 43, 123, and Oregon statutes and regulations, *id.* ¶¶ 34–36, 38, which forbid healthcare providers from disclosing PHI without the patient's express written authorization. Plaintiff alleges Defendant used the LinkedIn Insight Tag for targeted advertising purposes because the PHI it intercepted and shared with third parties is valuable for advertising purposes. *Id.* ¶¶ 13, 55, 58, 73.

Plaintiff filed this case as a putative class action. FAC, ECF 27. Plaintiff pleads a nationwide class, defined as "all persons in the United States, who during the class period, had a LinkedIn account and booked a consultation on www.ormfertility.com," *id.* ¶ 95, and a subclass of "all persons in Oregon who, during the class period, had a LinkedIn account and booked consultation on www.ormfertility.com," *id.* ¶ 96. Plaintiff brings four claims: violation of the Electronic Communications Privacy Act, negligence, breach of confidence, and unjust enrichment. *Id.* ¶ 5. Defendant now moves to dismiss all claims. MTD, ECF 33.

## STANDARDS

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failing to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 554, 570 (2007)). The court must construe all well-pleaded factual allegations in the light most favorable to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). However, a court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

## DISCUSSION

Defendant's motion to dismiss argues Plaintiff fails to state a claim for any of her asserted claims: violation of the Electronic Communications Privacy Act, negligence, breach of confidence, and unjust enrichment. This Court first addresses Plaintiff's federal ECPA claim and finds that Plaintiff states a claim for relief. Then, this Court addresses Plaintiff's three state law claims, negligence; breach of confidence; and unjust enrichment, and finds that at this preliminary stage, Plaintiff has adequately pleaded each claim with respect to her personally.

## A. Electronic Communications Privacy Act

The Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA"), provides for liability against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); *see also* § 2520 (creating a private right of action for a "person whose wire, oral, or electronic communication is intercepted . . . in violation of this chapter"). To state a claim under the relevant provisions of ECPA, Plaintiff must allege that Defendant: "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024). Defendant argues Plaintiff fails to allege the (2) interception and (3) contents elements. MTD, ECF 33 at 7.

### 1. Unlawful Interception

"Intercept" is defined as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). ECPA contains a "party exception," which exempts from liability any interceptions where one person "is a party to the communication." 18 U.S.C. § 2511(2)(d); *see In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim."). This exception is subject to a further exception, the "crime-tort exception." A party to a communication may still be liable if a communication "is intercepted for the purpose of committing any criminal or tortious act." § 2511(2)(d).

Here, Defendant was a party to the communication because Plaintiff's online activity occurred on its own Website. *See* Order, ECF 26 at 5; FAC, ECF 27 ¶ 29. Plaintiff's position is that Defendant's conduct falls within the crime-tort exception because Defendant intended to violate HIPAA's criminal prohibition against unauthorized disclosure of "individually identifiable health information." Opp'n, ECF 34 at 9, 13–16. Defendant argues that the crime-tort exception does not apply here because Plaintiff does not plausibly allege violations of HIPAA. MTD, ECF 33 at 8–13. Also, even accepting Plaintiff's allegations as true, Defendant argues its purpose in installing the LinkedIn Insight Tag was commercial gain, not committing any crime or tort. *Id.* at 8.

This Court reiterates its prior holding that a violation of HIPAA can fall under ECPA's crime-tort exception. Then, this Court addresses whether Plaintiff has pleaded enough facts to allege that Defendant ORM violated HIPAA by transmitting her information to LinkedIn. This Court finds that in her First Amended Complaint, Plaintiff has alleged sufficient facts to infer that Defendant transmitted her PHI to LinkedIn. Thus, Plaintiff adequately alleges that

Defendant violated HIPAA and that the crime-tort exception to ECPA's one-party consent rule applies.

### a. Crime-tort exception

Plaintiff alleges that "Defendant intercepted Plaintiff's and Class Members' electronic communications through the LinkedIn Insight Tag, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' PII and PHI to third parties, such as LinkedIn." FAC, ECF 27 ¶ 118. Plaintiff alleges this confidential information "was then monetized for targeted advertising purposes." *Id.* ¶ 119. Plaintiff alleges by its use of the LinkedIn Insight Tag, Defendant violated the criminal provision of the Health Insurance Portability and Accountability Act ("HIPAA") that prohibits healthcare providers from knowingly disclosing an individual's identifiable health information to a third party. *Id.* ¶ 123; *see id.* ¶ 34 (discussing Oregon's comparable health privacy statute).

This Court previously held that a violation of HIPAA for commercial gain can fall under ECPA's crime-tort exception. Order, ECF 26 at 6–9; *see id.* at 8 nn.2–3 (collecting cases). While "[c]ourts around the country, including courts within this circuit, are divided on th[is] issue," the weight of authority supports that an alleged violation of HIPAA can constitute an independent act for purposes of ECPA's crime-tort exception. *K.L. v. Legacy Health*, No. 3:23-cv-1886-SI, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024). This Court adopts its prior reasoning. At issue now is whether Plaintiff's new allegations are sufficient to allege that a crime or tort was committed here, and thus, that the communications with Defendant fall under ECPA's crime-tort exception.

"Plaintiff must sufficiently allege that she disclosed PHI to ORM, and ORM disclosed that PHI to LinkedIn through the LinkedIn Insight Tag, and that this disclosure led to targeted marketing." Order, ECF 26 at 10. With her Amended Complaint, Plaintiff has done so.

PAGE 7 – OPINION AND ORDER ON MOTION TO DISMISS

Information that relates to patients' "past, present, or future physical . . . health condition[s]" is protected by HIPAA. 45 C.F.R. § 160.103. This Court previously held, as other courts in the district and beyond have, that PHI does not include a user's browsing activity on a public-facing website that generates only general search queries. *See* Order, ECF 26 at 10; *Legacy Health*, 2024 WL 4794657, at *4 (holding that "generic search queries" generating while browsing a public website could not constitute PHI); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) (same), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

Plaintiff has pleaded enough facts in her Amended Complaint to find that she did more than browse Defendant's general interest form. Defendant argues that Plaintiff only submitted a general inquiry form and navigated the public portions of Defendant's website. MTD, ECF 33 at 11; *see* Reply ECF 35 at 2. The first two pages Plaintiff visited on Defendant's Website, figures 1 and 2, FAC, ECF 27 at 21, are undoubtedly public-facing pages. The first page is ORM's Website's homepage, and the second page is the IVF-specific subpage. FAC, ECF 27 at 21. When analyzing Figure 3, this Court previously found it lacked detail about any specific type of health services and that context suggested the form was ORM's general interest form. Order, ECF 26 at 11–12. The original Complaint also did not specify that Figure 3 was a subpage of Figure 2. *Id.* at 12. The First Amended Complaint added new, relevant facts. Plaintiff alleges she scheduled an IVF consultation (Figure 3) on ORM's Website by navigating through ORM's IVF-specific treatment page (Figure 2). FAC, ECF 27 ¶ 18; *see id.* at 21. On Figure 3, Plaintiff "entered her first and last name, email address, phone number, date of birth, city, state, and zip code," which was transmitted to LinkedIn when she clicked the "Schedule Your Consultation" button on the IVF specific treatment page. *Id.* ¶ 19. Plaintiff later attended her consultation and received fertility services from Defendant. *Id.* ¶ 8. Plaintiff did not plead that she accessed a

PAGE 8 – OPINION AND ORDER ON MOTION TO DISMISS

password-protected page on Defendant's Website. However, at this stage, Plaintiff's allegations are sufficient to push her browsing activity beyond "generic search queries created during such browsing activity." *Legacy Health*, 2024 WL 4794657, at *4.

Moreover, Plaintiff has pleaded sufficient facts to allege that Defendant disclosed her PHI to LinkedIn, which led to targeted marketing. This Court previously found that Plaintiff did not plead facts sufficient to infer that ORM disclosed her protected health information. Order, ECF 26 at 12–13. Plaintiff now alleges facts that support the inference that LinkedIn found out Plaintiff was seeking IVF treatment through Defendant rather than any other source. Plaintiff went directly to Defendant's Website to book her consult. FAC, ECF 27 ¶¶ 8, 18. She did not search for fertility treatment or other clinics online. *Id.* ¶ 8. She maintained an active LinkedIn account and used the same device and browser to access Defendant's Website and her LinkedIn account. *Id.* ¶ 9. Plaintiff also alleges that LinkedIn's advertising system relies exclusively on its own tracking technologies, like the Insight Tag, and does not target users based on Google Search queries. *Id.* ¶ 84. For purposes of evaluating a Rule 12(b)(6) motion to dismiss, this Court is required to accept that characterization of how LinkedIn operates as true. Based on the facts of the First Amended Complaint, this Court can infer that Plaintiff received targeted advertisements related to IVF services due to Defendant's use of LinkedIn's Insight Tag.

### 2. Interception of "Contents"

ECPA defines "contents" as "*any information* concerning the substance, purport, or meaning" of a communication. 18 U.S.C. § 2510(8) (emphasis added). The Ninth Circuit has held that the term "contents" refers to "the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). To determine whether information qualifies as "contents," "[c]ourts employ a

contextual 'case-specific' analysis hinging on 'how much information would be revealed' by the information's tracking and disclosure." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137–38 (3d Cir. 2015)).

The Ninth Circuit has held that the "specific search terms" a user enters into a search engine are "contents," but "basic identification and address information" are not. *In re Zynga*, 750 F.3d at 1108–09. In the healthcare context, district courts in this Circuit have held that plaintiffs adequately alleged the interception of "contents" where the intercepted data includes "personal search queries—such as specialty healthcare providers and treatments for medical conditions"—that reveal PHI. *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795–96 (N.D. Cal. 2022) (holding that descriptive URLs that include substantive search results in the link address, such as searches for particular medical services, are contents).

Defendant argues Plaintiff fails to allege any facts showing that the "contents" of a communication were disclosed to LinkedIn or any third party. MTD, ECF 33 at 13–15. Specifically, Defendant argues that URLs only contain the "contents" of a communication if they reveal a user's personal search query, and nothing in Figure 3 mentions IVF treatment. *Id.* at 14. But Plaintiff alleges that she navigated through Defendant's IVF-specific treatment page to reach Figure 3. FAC, ECF 27 ¶ 18. Plaintiff's allegations are that through the LinkedIn Insight Tag, Defendant disclosed her activity on its Website, which includes that she scheduled a consultation from the IVF subpage and the information (her full name, email address, phone number, date of birth, city, state, and zip code) she inputted on Figure 3. FAC, ECF 27 ¶ 19. As this Court

PAGE 10 – OPINION AND ORDER ON MOTION TO DISMISS

explained above, this information constitutes PHI, so it constitutes "contents" within the meaning of the statute. *See Cousin*, 702 F. Supp. 3d at 976; *In re Meta Pixel*, 647 F. Supp. 3d at 795–96.

Defendant's cited cases are distinguishable. *See* MTD, ECF 33 at 13–15. In *In re Zynga*, the Ninth Circuit held that a user's Facebook ID and address of the webpage from which the user's request was sent did not constitute "contents" because that information did not amount to the "substance, purport, or meaning" of a communication. 750 F.3d at 1107. Here, Plaintiff has pleaded that Defendant transmitted more than Plaintiff's social media ID and browsing activity. As described above, Plaintiff alleges that her booking a consult for IVF fertility treatment and a variety of other personal identifying information was shared with LinkedIn. *See* FAC, ECF 27 ¶ 19. Moreover, in her response in opposition, Plaintiff directs this Court to recent authority applying *In re Zynga* in this context. *See* Opp'n, ECF 34 at 17 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795). There, the Northern District of California court held that descriptive URLs are content because they concern the substance of a communication. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795. Here, Plaintiff has pleaded that she "navigated through ORM's IVF-specific treatment page (ormfertility.com/ivf-in-vitrofertilization/) and clicked the 'Schedule Your Consult' button," which was transmitted to LinkedIn. FAC, ECF 27 ¶ 18.

Similarly, Defendant's reliance on *In re Facebook Internet Tracking Litigation*, 140 F. Supp. 3d 922 (N.D. Cal. 2015), is unpersuasive. There, the court held that collecting certain URL information was insufficient to allege the "contents" of a communication were disclosed. *Id.* at 935–36. But here, Plaintiff has "specif[ied] just what information of [hers] was intercepted," *id.* at 935, that she booked an IVF fertility consultation with ORM and "first and last name, email address, phone number, date of birth, city, state, and zip code." FAC, ECF 27 ¶¶ 18–19.

PAGE 11 – OPINION AND ORDER ON MOTION TO DISMISS

Viewing the allegations in the First Amended Complaint in the light most favorable to Plaintiff, this Court finds that Plaintiff adequately pleads her ECPA claim. In so doing, this Court does not opine on the merits of this claim or the ability to certify a class.

## B. State Law Claims

Plaintiff also brings three claims under Oregon law: negligence, breach of confidence, and unjust enrichment. For the reasons explained below, this Court will allow all three to survive the motion to dismiss stage.

### 1. Negligence

To bring a negligence claim brought under Oregon law, a plaintiff must show that a defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari ex rel. Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987). "'Duty' is not an element of a negligence case unless the claim involves an obligation arising from a special relationship which creates, limits or defines the obligation." *Budd v. Am. Sav. & Loan Ass'n*, 89 Or. App. 609, 612 (1988). When this type of special relationship between the tortfeasor and injured party exists, the former owes the latter "a duty to exercise reasonable care beyond the common law duty to prevent foreseeable harm." *Conway v. Pac. Univ.*, 324 Or. 231, 239 (1996).

Here, Plaintiff's negligence theory is that Defendant had a duty, as a healthcare provider, to protect her PHI from unauthorized disclosure and that Defendant breached that duty by disclosing that information to LinkedIn without authorization from Plaintiff. FAC, ECF 27 ¶¶ 130–31, 134–39. Defendant argues Plaintiff fails to adequately allege breach because Plaintiff "has not alleged any facts demonstrating that her medical records—or those of any individual— were disclosed to a third party, nor that any specific diagnosis, treatment, or medication information was shared." MTD, ECF 33 at 15.

PAGE 12 – OPINION AND ORDER ON MOTION TO DISMISS

Defendant does not provide authority to support the proposition that healthcare providers' duty to protect patient information is strictly limited to treatment records. Defendant cites to *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024), where the court held that a plaintiff failed to state a Confidentiality of Medical Information Act claim under California law. There, the court found the plaintiffs failed to allege with any specificity what medical information was disclosed or when it was disclosed. *Id.* These facts are distinguishable because B.N. alleges that information specific to her booking a fertility appointment was disclosed to LinkedIn when she used Defendant's website. Oregon law provides that individuals have the "right to have *protected health information* . . . safeguarded from unlawful use or disclosure." O.R.S. 192.553(1)(a) (emphasis added). Oregon law also provides that PHI may only be used or disclosed with the patient's prior authorization or without authorization under certain circumstances. O.R.S. 192.558. Because Oregon law does not strictly limit the protection of healthcare information to strictly "medical records," as Defendant suggests, and because this Court determined above that Plaintiff's PHI was disclosed, Plaintiff has adequately alleged at this stage that Defendant breached its duty to protect Plaintiff's PHI. Thus, Plaintiff states a claim for negligence.

### 2. Breach of Confidence

To state a claim for breach of confidence under Oregon common law, a plaintiff must allege an "unauthorized and unprivileged disclosure of confidential information obtained in a confidential relationship." *Humphers v. First Interstate Bank of Or.*, 298 Or. 706, 717 (1985). The duty to maintain confidentiality must arise from a "legal source external to the tort claim itself." *A.B. v. Or. Clinic*, 321 Or. App. 60, 70 (2022) (citation modified).

Defendant does not argue that Plaintiff fails to adequately identify a legal source creating a duty or that any of the sources identified in the First Amended Complaint do not impose a duty

PAGE 13 – OPINION AND ORDER ON MOTION TO DISMISS

to maintain confidentiality. Rather, Defendant argues Plaintiff "has failed to allege any facts showing that her medical information was actually transmitted to LinkedIn or any other third party." MTD, ECF 33 at 16. This Court has found that for purposes of her federal claim, Plaintiff has pleaded sufficient facts to support the inference that her protected health information was transmitted to LinkedIn. The FAC describes how Defendant allegedly intercepted and disclosed Plaintiff's confidential communications, including her medical appointment information for IVF fertility treatment, to LinkedIn through the Insight Tag. *See* FAC, ECF 27 ¶¶ 7–9, 76–82, figs. 1–3. Plaintiff also identifies various federal and state regulations that create a duty of trust and confidence that Plaintiff alleges Defendant breached. *See id.* ¶ 155. At this stage of the litigation, these allegations are sufficient to state a claim for breach of confidence.[2]

### 3. Unjust Enrichment

Finally, to state a claim for unjust enrichment under Oregon law, Plaintiff must allege sufficient facts to establish: "(1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Cron v. Zimmer*, 255 Or. App. 114, 130 (2013). Plaintiff alleges that because Defendant collected and disclosed her private data to Defendant's monetary benefit, those monetary benefits should be disgorged. FAC, ECF 27 ¶¶ 160–65.

---

[2] To the extent Plaintiff's negligence claim rests on the same facts as her breach of confidence claim, her negligence claim may be foreclosed later in this litigation. "Courts in this District consistently reject negligence claims at the summary judgment stage when the negligence claim is based on the same facts as . . . an intentional tort." *Wagoner v. City of Portland*, No. 3:14-cv-2063-AC, 2017 WL 2369399, at *11 (D. Or. May 31, 2017) (collecting cases). But because "Rule 8 [of the Federal Rules of Civil Procedure] permits an allegation of negligence in one count and an allegation of intentional action, based on the same facts, in another," *Rodriguez v. City of Portland*, No. CIV. 09-850-KI, 2009 WL 3518004, at *2 (D. Or. Oct. 21, 2009), this Court will allow the claim to proceed at this stage.

Defendant argues Plaintiff's unjust enrichment claim fails because equitable relief, such as restitution, is not available where an adequate remedy at law exists. MTD, ECF 33 at 16–17. Defendant is correct that equitable remedies are appropriate only "when there is no adequate remedy of law—that is, when there is no 'practical, efficient, and adequate' solution in the law." *Legacy Health*, 2024 WL 4794657, at \*9 (quoting *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1148 (D. Or. 2020). As the Court held in *Legacy Health*, however, Federal Rule of Civil Procedure Rule 8(d) permits parties at the pleading stage to plead various claims in the alternative. *See id.* Plaintiff has done so here. Dismissing Plaintiff's unjust enrichment claim would be premature at the motion to dismiss stage.

Defendant also argues Plaintiff fails to allege the financial gain Defendant obtained from the alleged disclosure. MTD, ECF 33 at 17. This is inconsistent with the First Amended Complaint, which alleges:

> Defendant exceeded any authorization given and instead consciously disclosed and used [Plaintiff and Class Members'] information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation.
>
> Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.

FAC, ECF 27 ¶ 162–63. These allegations are sufficient to state a claim for unjust enrichment. *See M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-cv-01691-AA, 2024 WL 3970796, at \*7 (D. Or. Aug. 28, 2024) ("The Complaint alleges that the benefit conferred was medical information of patients; that Defendant took affirmative steps to collect it; and that it would be unjust for Defendant to retain the benefit from selling this information to advertisers. This amounts to a plausible claim for unjust enrichment.").

PAGE 15 – OPINION AND ORDER ON MOTION TO DISMISS

## CONCLUSION

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, ECF 33, is

DENIED.

**IT IS SO ORDERED.**

DATED this 3rd day of April, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge